514 P.2d 472

**The STATE of Arizona, Appellee,**

v.

**Joe BELCHER, Appellant.**

**No. 2502.**

Supreme Court of Arizona,
In Banc.

Sept. 27, 1973.

Rehearing Denied Oct. 30, 1973.

Gary K. Nelson, Atty. Gen. by William J. Schafer, III, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Rudy Gerber, Sp. Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a jury verdict and judgment of guilt to the crime of voluntary manslaughter, §§ 13–455, 456, and 457 A. R.S., and a sentence of not less than eight nor more than ten years in the Arizona State Prison.

Although the defendant raises other matters on appeal, we feel it necessary to answer only one question and that is: Was the exclusion by the trial judge of certain testimony concerning self-defense reversible error?

The facts necessary for a determination of this matter on appeal are as follows. On the evening of 9 July 1971, the defendant, age 57, height 5'8", weight approximately 150 pounds, and the deceased, Emanuel W. Washington, Jr., age 32, height 6'2", weight 250 pounds, were playing dice at Ervis Easter's Shoe Shine Place, 1324 West Buckeye Road, in Phoenix, Arizona. Ervis Easter is also called "Casey" and was the stepbrother of the victim, Emanuel Washington, Jr. Both the defendant and the victim had been drinking and an argument ensued between the two men over some $30 apparently won by the victim from the defendant in the course of the dice game. The defendant then left the premises and crossed West Buckeye Road. The victim followed him across West Buckeye and just as an unmarked patrol car approached the scene, two or more shots were fired and the decedent was mortally wounded. He was pronounced dead upon arrival at the hospital. Blood taken from the victim by a pathologist showed a blood alcohol reading of .44. Defendant was apprehended immediately and charged with first degree murder. He claimed the shooting was in self-defense and introduced the testimony of several witnesses who claimed

that the victim had a gun and tried to use it as he came across the street after the defendant. The victim's gun was never found by the police. At the trial the following transpired:

"Q   Now, at this time did you observe Mr. Washington take any money, sir?

"A   Yes, sir.  Well, by that time, Casey, he goes on out the door, and Washington just reached over and was taking all of the money, taken, say, all of it.  He has a little bit more change on there, and he just pushes it away and says, 'If you going to take that, just take it all.'

"Q   Who said that?

"A   He told Washington that, and he just reached and put it in his pocket.

"Q   Washington reached down and put it in his pocket?

"A   Yes.  He said, 'Before I give up any of this money, I will tell (sic) every God damn body in here.'

"Q   At this point, did you see him with anything?

"A   Yeah, he had this gun.

"Q   And where did he have this gun?

"A   Right in the pocket, pulled it out and backed out the door.

"Q   Is that when he made that statement to which you just testified to?

"A   What did you say?

"Q   Is that when he made that statement you just testified to?

"A   Yes, he would kill everybody in there, and walked on out the door.

"Q   That was Emanuel Washington?

"A   That was Washington.

"Q   Where was the defendant, Joe Belcher, at this time?

"A   Still down there on his knees, so when he goes out the door in about a minute, he gets up and walks over there behind him to the place there. And so I stood in the door and I heard Casey tell him—

"MR. FENDON:  Objection, hearsay, your Honor.

"THE COURT:  Sustained.

"THE WITNESS:  He say—

"MR. ELDRIDGE:  Q  Well now, you say you heard Casey tell something to the defendant?

"A   Told Joe to get on away from there because—

"THE COURT:  Objection sustained, and the jury is admonished to disregard that last answer.  It is stricken.

"MR. ELDRIDGE:  If the Court please, I would like to make an offer of proof on this because—

"THE COURT:  Offers of proof are for the Appellate Court, not for this proof (sic).  Objection sustained.

"MR. ELDRIDGE:  When may I make my offer of proof, your Honor?

"THE COURT:  Any time we are not here."

The offer of proof made for the record before the court reporter without the presence of the court was as follows:

"MR. ELDRIDGE:  Pursuant to the Court's instructions and rulings upon making an offer of proof, the Court feeling that an offer of proof is strictly for appellate purposes only and has refused to allow me to make my offer of proof during the course of the testimony of the witness, and upon the Court's instructions that I make my offer of proof before the Court Reporter in her room, I, therefore, tender the following offer of proof with respect to my objections on the non-admission of the testimony of the witness who testified yesterday, January 4, 1972, Mr. Ike Wyatt.

"Mr. Wyatt was about to testify on behalf of the defense that after the deceased's stepbrother, Ervis Easter, also known as Casey, came into his place and tried to settle the dispute between the defendant and the victim, Emanuel Washington, Jr., that Mr. Easter requested the defendant to leave, and he did.

"And as they were standing at the door, that is, the defendant and the victim's stepbrother and the victim, the stepbrother, Ervis Easter, that Ervis Easter, the victim's stepbrother, told the defendant to go across the street as he knew his brother.

"And I think it would probably be better to quote what he would say as follows, 'You better go across the street, Joe, as I know my brother, and you better go if you know what is good for you.'

"I feel the exclusion of the testimony is prejudicial and reversible error upon the grounds and for the reasons that this goes directly to the state of mind of the defendant, the defense being self-defense in this case, and the state of mind of the defendant is always in issue."

The jury returned a verdict of guilty to the crime of manslaughter from which the defendant appeals.

 By the rejected testimony the defense was attempting to show that the defendant had cause to fear for his life when the decedent crossed the street. The testimony was offered not to show the truth of the statement, but rather to show the effect of the utterance upon the defendant's frame of mind. It was offered, in other words, as circumstantial evidence tending to show the reasonableness of defendant's apprehension of serious bodily harm at the hands of the deceased, which reasonable apprehension is necessary for the establishment of the defense of self-defense. The evidence, therefore, was not only admissible over hearsay objections, but it was reversible error to exclude the evidence once the issue of self-defense had been validly injected into the case. State v. Jackson, 94 Ariz. 117, 382 P.2d 229 (1963); State v. Loftis, 89 Ariz. 403, 363 P.2d 585 (1961).

In the instant case, the trial judge refused to hear the defendant's offer of proof contending it was for the appellate court only. We disagree. It is true that an offer of proof is necessary in order to secure review of exclusion of evidence unless from the evidence it is obvious what the answer of the witness will be or what the proof will be. State v. Daymus, 90 Ariz. 294, 367 P.2d 647 (1961). However, offers of proof of evidence or testimony not reasonably anticipated by the trial court can be of great assistance to the trial court in determining whether to ultimately admit the evidence tendered. In the instant case, the defense attorney was forced to make his offer of proof before the court reporter, outside the presence of the trial court, and, of course, the trial court did not have a chance to adequately reconsider his exclusion of the evidence which he may well have done upon reflection. He could have then avoided a reversal of the case. Under these circumstances the trial court could benefit just as much from a proper offer of proof as the appellate court.

Reversed and remanded for new trial.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.