655 P.2d 1333
Kelly DEYOE,
Plaintiff/Appellant/Cross-Appellee,

v.

CLARK EQUIPMENT COMPANY, INC.,
Defendant/Appellee/Cross-Appellant.

No. 2 CA–CIV 4273.

Court of Appeals of Arizona,
Division 2.

Sept. 14, 1982.

Rehearing Denied Oct 26, 1982.

Review Denied Dec. 14, 1982.

Haralson, Kinerk & Morey, P.C. by Dale Haralson and William H. Ricker, and Biggers & Enriquez by John W. Biggers, Tucson, for plaintiff/appellant/cross-appellee.

Chandler, Tullar, Udall & Redhair by John W. McDonald, Tucson, for defendant/appellee/cross-appellant.

## OPINION

HOWARD, Chief Judge.

This products liability case was tried solely on the basis of strict liability for the defective design of an earth compactor which rolled over and seriously injured appellant Deyoe. A jury found the design not to be defective. Appellant claims that the court erred in (1) excluding testimony of his expert witness; (2) admitting evidence of government standards and industry practice; (3) admitting evidence of assumption of risk and actions of third parties, limiting evidence of appellant's "state of mind" and (4) giving jury instructions on assumption of risk, "open and obvious" defects and product misuse. We disagree and affirm.

On August 5, 1977, appellant was operating a rubber-wheeled compactor on a road-

way construction site. The machine was designed to compact flat surfaces and at this time was being used to compress fill dirt comprising the shoulder of the highway. The fill being compacted was approximately thirty feet high because of a ravine on the western side of the roadway. Appellant apparently drove too close to the fill's edge, and the machine went over the edge, rolled and crushed him.

Appellant claimed that the compactor was defective because of certain visual obscurements and the lack of any roll-over protection system.

## EXPERT WITNESS TESTIMONY

Appellant claims in his brief that he attempted to have an expert witness, Sevart, testify in his case in chief after one of appellee's experts, Prosek, had testified out of order because of a personal schedule conflict. Appellant asserts that the court denied this request and also denied a request to have Sevart testify as a rebuttal witness.

Appellee claims in his brief that appellant purposefully withheld Sevart's testimony until Prosek had been called to testify in order to listen to that expert's testimony. Appellee also alleges that the court ruled that if appellant wished to call Sevart, he should do so prior to Prosek's testimony, and if appellant wished to use Sevart as a rebuttal witness, he could only do so if new matters were raised.

This court has examined the trial transcripts and can find no record of appellant's attempt to call his witness Sevart at anytime, nor appellee's objection to this witness, nor a court ruling on the matter, nor an offer of proof made to the court concerning the matter. What we do find in the transcripts is that on April 1, 1981, after both sides had rested and the court and jury had retired, both attorneys for the parties talked to each other in front of a court reporter to give an "offer of proof." On April 3, 1981, after the jury had rendered

its verdict and the judge had left the court, two attorneys talked together to "stipulate" that they had failed to make a record concerning calling Sevart and would make a record later because they didn't agree with each other. On August 10, 1981, more than three months after the trial and two days before the filing of an appeal, two attorneys met together in front of a transcriber to make an "offer of proof" concerning what an expert would have testified to at trial.

Needless to say, at each of these meetings there was disagreement as to what was being done ("... I don't agree exactly with what counsel says, but I agree there is no record: ..."); how it should be done ("Just a minute. In your offer of proof I understand you are to state what the witness would testify to if called, not the reason."); and whether it was done ("... I just want to put on the record I object to an offer of proof because I don't believe the stipulation had anything to do with that.... I don't believe that I would ever stipulate to allow somebody, months after a trial, make an offer of proof after they've had the benefit of the time and effort to analyze the issues."). Although they could not agree on what had actually happened before the trial court, they evidently thought that this court could sort out the conflicting statements in the stipulation. We are not in a position to do so.

In order to prevent such confusion, Rule 103(a)(2), Arizona Rules of Evidence, 17A A.R.S. specifically provides how "excluded evidence" is to be preserved for judicial review.

"(a) *Effect of erroneous ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

\* \* \* \* \* \*

(2) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was *made known to the*

*court* by offer or was apparent from the context with which questions were asked." (Emphasis added)

Such an offer of proof serves a dual purpose. First, the description puts the trial judge in a better position to determine whether the initial ruling was erroneous and to allow evidence to be introduced if the court decides it was. See *State v. Belcher,* 109 Ariz. 551, 514 P.2d 472 (1973); Udall and Livermore, Law of Evidence, Vol. 1, § 13, 20 (2nd Ed. 1982). In this instance, we do not know what was actually presented to the court, nor what the objection was, nor what the ruling was.

Second, the appellate court uses an offer of proof to determine if any error was made within the context of the case. *Musgrave v. Karis,* 63 Ariz. 417, 163 P.2d 278 (1945). This court cannot decide if a lower court erred when we do not know exactly what was before it.

■■■ That appellant had ample opportunity to make a proper offer of proof during the proceedings, in front of the court and on the record, is manifest. This he failed to do. However, even assuming that he properly attempted to call his expert Sevart in his case in chief or in rebuttal and was denied the opportunity by a ruling of the court, we do not see grounds for reversal. A trial judge has discretion to order a logical order of proof. *DeElena v. Southern Pacific Company,* 121 Ariz. 563, 592 P.2d 759 (1979); and see *State v. Spratt,* 126 Ariz. 184, 613 P.2d 848 (App. 1980); *State v. Gambrell,* 116 Ariz. 188, 568 P.2d 1086 (App.1977). Therefore, if the trial court indeed had denied appellant's request to have his expert testify in his case in chief after Prosek, it was within the court's discretion to do so.

■■■ In regard to the rebuttal evidence, "one cannot, as a matter of right offer rebuttal evidence which was proper and should have been introduced in chief, even though it tends to contradict the adverse party's evidence. . . ." C.J.S., Trial § 102,

215. Cf. *Lowery v. Turner,* 19 Ariz.App. 299, 506 P.2d 1084 (1973). It has been recognized that the line between direct and rebuttal evidence is hazy and hard to determine and the trial court must have reasonable discretion in fixing the line absent manifest abuse. *Caughlin v. Sheets,* 206 Okla. 283, 242 P.2d 724 (1952); see also *Flieger v. Reeb,* 120 Ariz. 31, 583 P.2d 1351 (App. 1978). Even from the argument made by appellant in his brief, we do not see any manifest abuse.

## ADMISSION OF FEDERAL STANDARDS AND STATE OF THE ART EVIDENCE

Appellant moved in limine to preclude introduction of government standards which motion was granted. At trial, however, appellant testified on direct examination as follows:

"Q. Kelly, before this all occurred, do you know what a roll cage or roll structure was?

A. Yes.

Q. And you had seen them on other equipment?

A. Yes, all the other equipment at the job there had roll cages on it.

Q. When you were assigned to operate this one, you knew that it didn't have?

A. Yes.

Q. Did that raise any question in your mind, what did you think?

A. Well, it seemed the machine was much higher, square than most of the other machines, if it rolled it seemed like it would roll on its side, it wouldn't go all the way over."

After a lengthy discussion in chambers concerning this testimony, the court ruled that appellee would be entitled to introduce evidence explaining the reason why "all the other equipment at the job" site had rollover protection and the compactor in question did not. Subsequently, appellee presented OSHA standards to the jury

which demonstrated lack of a federal requirement that a compactor have roll-over protection. Concerning this testimony, the jury was given the following instruction:

"You are instructed that the testimony and evidence that has been presented concerning the Occupational Safety and Health Administration (OSHA) and the requirements for rollover protection on machines other than the subject compactor has been admitted into evidence for the limited purpose of explaining the qualifications and background experience of some of the experts and why the other machines on the day of the accident had rollover protection. This evidence may not be considered by you in determining whether or not the compactor was defective or unreasonably dangerous."

Despite this instruction, appellant claims that the testimony was error requiring reversal. We disagree.

 In our recent case of *Hohlenkamp v. Rheem Manufacturing Company,* 134 Ariz. 208, 655 P.2d 32 (1982), after lengthy discussion, we held that both state of the art and industry standards may be considered in strict liability cases on the issue of whether a product is in a defective condition unreasonably dangerous to the user. See also *Union Supply Company v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978). If a plaintiff in a design defect case can attempt to prove a defect by introducing evidence of feasible alternative designs, then a defendant should be allowed to show that a given alternative design is not required by federal regulations. *Rucker v. Norfolk & Western Railway Company,* 396 N.E.2d 534, 77 Ill.2d 434, 33 Ill.Dec. 145 (1979).

Although appellant argues that admission of these standards improperly focuses the factfinder's attention on the manufacturer's conduct (negligence standard) rather than the product (strict liability standard), we do not agree. The evidence that we approve is that the compactor, not the manufacturer's conduct, conforms to federal OSHA standards. *Rucker v. Norfolk,* supra.

## JURY INSTRUCTIONS AND ADMISSION OF EVIDENCE

Appellant claims that the trial court erred concerning certain jury instructions and admission of evidence as follows: (1) By denying a pretrial motion in limine to exclude evidence of assumption of risk and by giving a jury instruction on assumption of risk; (2) by limiting evidence of appellant's state of mind which would allegedly show that he did not voluntarily and unreasonably encounter a known danger (assume the risk); (3) by allowing testimony concerning actions of third parties which allegedly inferred contributory negligence or a superseding intervening cause; (4) by instructing the jury concerning the fact that they must consider "whether the alleged defect, if any, was open and obvious to an ordinary compactor operator"; and (5) by instructing the jury on product misuse.

We consider all of these issues moot on this appeal because the jury not only returned a general verdict in favor of appellee, but also answered the following special interrogatories.

"1. Does the jury find from a preponderance of the evidence that the RW–181 involved in this accident was defective and unreasonably dangerous because of the alleged existence of a vision obscuration to the front, right front and/or right side? Yes or No.

2. Does the jury find from a preponderance of the evidence that the RW–181 involved in this accident was defective and unreasonably dangerous for the reason that the product did not have a roll-over protection system when manufactured in 1969? Yes or No.

3. Does the jury find from a preponderance of the evidence that the RW–181 involved in this accident was defective and unreasonably dangerous because of the alleged existence of a vision obscuration to the front, right front and/or right side, and for the reason that the product did not have a roll-over protection system when manufactured in 1969, and any and

all other conditions relating to the product which have been established by the evidence? Yes or No."

The jury unanimously answered each interrogatory "No."

 If an action is one at law, and the special verdicts of the jury are supported by evidence, the special verdicts are binding upon the court. *Bohmfalk v. Vaughn,* 89 Ariz. 33, 357 P.2d 617 (1960). Because the jury determined that the product was not defective and unreasonably dangerous, the defense of assumption of risk is not called into question as the burden of proof of the plaintiff's assumption of risk is only on the defendant when he would otherwise be subject to liability to the plaintiff. Restatement (Second) of Torts, § 496 G. (1965); and see Keeton, Assumption of Risk in Products Liability Cases, 22 La.L.Rev. 122, 164 (1961); Keeton, Assumption of Products Risk, 19 S.W.L.J. 61, 67–68 (1965).

In a like manner, the question of whether defense arguments concerning actions of third parties inferred contributory negligence or a superseding cause is moot if the design was not defective. In addition we note that there was an instruction to the jury stating: "More than one person may be liable for causing an injury. A defendant may not avoid liability by claiming some other person, whether or not named as a defendant in this action, helped cause the injury." This would seem to put into perspective any alleged actions of third parties. The jury instruction concerning an "open and obvious" defect reads:

> "One of the factors you must consider in determining under the definitions I have provided, is whether the alleged defect, if any, was open and obvious to an ordinary compactor operator."

Since the jury found no defect, the instruction is not a proper consideration for us on appeal.

Lastly, appellant claims that an instruction concerning product misuse was unsupported by the evidence thus requiring reversal. The instruction reads:

> "If the plaintiff used the RW–181 in a manner not reasonably foreseen by the manufacturer then the *defense* of unanticipated use or misuse should apply.
>
> If you find that the injury is the result of any misuse by the plaintiff and not the result of any alleged defect in the product, then the plaintiff should not recover.
>
> * * * * * *
>
> Another one of the *defenses* in this case is that plaintiff misused the compactor. As to this defense, the defendant has the burden of proving that the plaintiff misused the compactor." (Emphasis added)

Because the instructions clearly talk about misuse as a defense, and Arizona law at the time of this action[1] was that misuse was a defense, *McCarty v. F.C. Kingston Company,* 22 Ariz.App. 17, 522 P.2d 778 (1974); *O.S. Stapley Company v. Miller,* 103 Ariz. 556, 447 P.2d 248 (1968), we need not consider this issue in view of the jury's answer.

Affirmed.

BIRDSALL, J., and JAMES C. CARRUTH, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having recused himself in this matter, Judge JAMES C. CARRUTH was called to sit in his stead and participate in the determination of this decision.

1. A.R.S. § 12–683, which was not in effect at the time of this accident, makes unforeseeable use an affirmative defense.