936 P.2d 1274

**Mary H. YSLAVA, as Special Administrator of the Estate of Benita G. Yslava, deceased, Plaintiff,**

v.

**HUGHES AIRCRAFT COMPANY, a Delaware corporation, Defendant.**

**HUGHES AIRCRAFT COMPANY, Third–Party Plaintiff,**

v.

**CITY OF TUCSON, Tucson Airport Authority, McDonnell Douglas Corporation, and General Dynamics Corporation, Third–Party Defendants.**

**Jo Ann LANIER, a single woman, and Diego Edwardo Lozano, a single man, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**HUGHES AIRCRAFT COMPANY, Defendant.**

**HUGHES AIRCRAFT COMPANY, Third–Party Plaintiff,**

v.

**CITY OF TUCSON, et al., Third–Party Defendants.**

No. CV–96–0345–CQ.

Supreme Court of Arizona, En Banc.

April 30, 1997.

Law Office of Sheldon Lazarow by Sheldon Lazarow, Tucson, Robert A. Bonn, Attorney–At–Law by Robert A. Bonn, Tucson, and Cohen Milstein Hausfeld & Toll, P.L.L.C. by Herbert E. Milstein, Anthony Z. Roisman, Richard S. Lewis, Washington, DC, for Plaintiffs.

Kirkland & Ellis by Jeffrey S. Davidson, Andrew B. Clubok, Washington, DC, Butler & Stein by A. Bates Butler, III, Tucson, 'Featherstone & Shea by Bruce A. Featherstone, John DeSisto, Denver, CO, Petrie, Bauer & Vriesman, LLP by Todd L. Vriesman, Denver, CO, for Defendant Hughes Aircraft Company.

Teilborg, Sanders & Parks, P.C. by James A. Teilborg, Mark G. Worischeck, Keith R. Bevan, James D. Smith, Phoenix, for City of Tucson.

Adler, Murphy & McQuillen by James F. Murphy, John H. Mullan, Chicago, IL, Doyle & Appel, P.C. by Walter Grochowski, Phoenix, and Anderson, Kill & Olick by David A. Paige, Tucson, for Tucson Airport Authority.

DeConcini, McDonald, Brammer, Yetwin & Lacy by David C. Anson, Tucson, and McKenna & Cuneo, L.L.P. by Herbert Fenster, Tami Lyn Azorsky, Washington, DC, for General Dynamics Corporation.

Jones, Skelton & Hochuli by Kevin D. Neal, James J. Osborne, Phoenix, and McDonnell Douglas Corporation by Dan Summers, Assistant General Counsel, St. Louis, MO, for McDonnell Douglas Corporation.

O'Connor Cavanagh Anderson Killingsworth & Beshears P.A. by Christopher Robbins, Phoenix, for Amicus Curiae Arizona Association of Defense Counsel.

City of Phoenix by Roderick G. McDougall, Phoenix City Attorney, Craig J. Reece, Assistant City Attorney, Phoenix, for Amicus Curiae City of Phoenix.

Gallagher & Kennedy by David P. Kimball, III, Phoenix, for Amicus Curiae Arizona Chamber of Commerce.

Osborn Maledon P.A. by David G. Campbell, Diane M. Johnsen, Clark M. Porter, Joan S. Burke, Phoenix, and Dalton Gotto Samson & Kilgard by Shane R. Swindle, Phoenix, for Amicus Curiae Components In-

corporated/Corning Incorporated/Alliedsignal.

Treon Strick Lucia & Aguirre by Richard T. Treon, Anthony R. Lucia, Sharon G. Slifko, Cindy H. Strickland, Phoenix, Goldberg Persky Jennings & White, P.C. by Robert J. Jennings, Jr., Craig Vandergrift, David B. Rodes, Pittsburgh, PA, Thomas W. Henderson by Thomas W. Henderson, Pittsburgh, PA, Robbins & Green P.A. by Philip A. Robbins, Sarah N. McGiffert, Alfred W. Ricciardi, Phoenix, and Law Offices of David Dannacher by David P. Dannacher, Phoenix, for Amicus Curiae plaintiffs in Baker v. Motorola and Lofgren v. Motorola.

David F. Zoll, Vice President and General Counsel, Chemical Manufacturers Association, Arlington, VA, for Amicus Curiae Chemical Manufacturers Association.

Allen & Price, P.L.C. by Robert E.B. Allen, Charles S. Price, Phoenix, for Amicus Curiae plaintiffs in McIntire v. Motorola.

## OPINION

JONES, Vice Chief Justice.

We are asked by the United States District Court for the District of Arizona to decide a question of Arizona law under certification procedures pursuant to Rule 27, Arizona Rules of the Supreme Court. This court has jurisdiction under Arizona Constitution article VI, section 5(6), Arizona Revised Statutes section 12–1861, and Rule 27.

The certified question was stated as follows:

> In 1987, the Arizona Legislature enacted A.R.S. § 12–2506, which abolished joint and several liability in actions for personal injury, property damage or wrongful death. The statute contains two exceptions in Section D of A.R.S. § 12–2506. The exception at issue here is A.R.S. § 12–2506(D)(2), which states: "Nothing in this section prohibits the imposition of joint and several liability in a cause of action relating to hazardous wastes or substances or solid waste disposal sites." A.R.S. § 12–2506(D)(2).
>
> Does this exception preserve joint and several liability in tort actions for personal injury, wrongful death and requests for medical monitoring arising from the contamination of drinking water with hazardous wastes or substances? Or, does the exception merely allow the Legislature to impose joint and several liability through other statutes relating solely to environmental cleanup costs?

After consideration, we respond that A.R.S. § 12–2506(D)(2) leaves undisturbed the common law remedy of joint and several liability in tort actions for injury or wrongful death and requests for medical monitoring that arise from the contamination of drinking water by hazardous wastes or substances or solid waste disposal sites.

## FACTS AND PROCEDURAL HISTORY

In 1981, groundwater wells located near Tucson International Airport were closed when testing revealed impermissibly high levels of benzene, trichloroethylene (TCE), and other hazardous substances. The United States Environmental Protection Agency found that a government-owned facility operated by Hughes Aircraft Company (Hughes) was a primary source of the contamination. In 1991, Hughes settled claims of approximately 2400 Tucson residents for injuries allegedly caused by the groundwater contamination. After the settlement, the two lawsuits involved in this certified question were filed. *Yslava v. Hughes Aircraft Co.*, CIV–91–525–TUC–ROS, consolidates approximately 500 personal injury and wrongful death claims, while *Lanier v. Hughes Aircraft Co.*, CIV–92–564–TUC–ROS, is a class action comprised of Tucson residents requesting medical monitoring.

Hughes has filed claims for third-party contribution against the City of Tucson, the Tucson Airport Authority, General Dynamics Corporation, and McDonnell Douglas Corporation (defendants).[1] The City of Tucson owns the property on which the Tucson In-

---

1. For purposes of simplicity, the term "defendants" includes all third-party defendants named

by defendant Hughes in its third-party complaint.

ternational Airport is located. The Tucson Airport Authority has leased the property from the City since 1948, while General Dynamics and McDonnell Douglas or their predecessors conducted operations on the property for limited periods during the 1940s and 1950s. Defendants have urged the federal district court to find that joint and several liability among multiple defendants was abolished in Arizona by the enactment of A.R.S. § 12–2506(A) and that the exception in A.R.S. § 12–2506(D)(2) does not preserve such liability in the instant case. Accordingly, the district court certified the question.

## DISCUSSION

At common law, prior to the adoption of A.R.S. § 12–2506, liability was said to be joint and several when the claimant could bring suit to enforce his entire claim against one or more joint tortfeasors separately, or against all of them together. Thus, two or more defendants found responsible for tortious conduct causing indivisible injury were subject to both joint and several liability. *Holtz v. Holder,* 101 Ariz. 247, 251, 418 P.2d 584, 588 (1966).

■ In 1984, the Arizona Legislature adopted a version of the Uniform Contribution Among Tortfeasors Act (UCATA). A.R.S. §§ 12–2501 to –2509. One purpose of UCATA is to ensure that a joint tortfeasor paying more than its proportional share of the "common liability for the same injury" will have a right of contribution from other joint tortfeasors. *Cella Barr Assocs., Inc. v. Cohen,* 177 Ariz. 480, 483, 868 P.2d 1063, 1066 (App.1994) (environmental auditor that settled purchasers' suit for professional malpractice precluded from maintaining action against purchaser's counsel for contribution and indemnification as not relating to hazardous wastes); *see also Dietz v. General Elec. Co.,* 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991) (nonemployer defendants allegedly contributing to plaintiff's work-related injuries permitted to name plaintiff's employer as nonparty at fault in personal injury action).

■ In 1987, the legislature enacted A.R.S. § 12–2506 to abolish common law

joint liability, subject to certain exceptions, and to preserve several liability in claims brought against multiple tortfeasors.

Section 12–2506(A) (section (A)) states in part:

> In an action for personal injury, property damage or wrongful death, the liability of each defendant for damages is several only and is not joint, *except as otherwise provided in this section.*

(Emphasis supplied.) We accord the phrase "except as otherwise provided in this section" its plain meaning and conclude that the phrase is of critical importance in answering the district court's question because of its placement in the same sentence that abolishes joint liability. The language sends a clear message that the legislature did not intend to create a blanket abolition of all forms of joint liability in tort actions and did intend to define exceptions to the rule. The legislature indeed crafted two exceptions, placing both in section (D) of the statute. The exception relevant to the present case is set forth in section 12–2506(D)(2) (section (D)(2)):

> D. The liability of each defendant is several only and is not joint, except that:
>
> . . . .
>
> 2. Nothing in this section prohibits the imposition of joint and several liability in a *cause of action relating to hazardous wastes or substances or solid waste disposal sites.*

(Emphasis added.)

This language is equally plain. It acknowledges the clause in section (A) as precluding application of the statute to excepted causes, and then describes with particularity the very actions that are excepted. Plaintiffs thus argue that the alleged contamination of groundwater by Hughes and the defendants falls squarely within section (D)(2) and that the phrase in section (A), "except as otherwise provided in this section," completes a concise statutory equation for the non-disturbance of common law joint liability in cases, as here, "relating to hazardous wastes or substances or solid waste disposal sites."

Defendants assert that the statute effectively abolishes joint and several liability in

all tort actions, including this one, and that to invoke joint liability in any action alleging hazardous waste requires formal "reinstatement" of the doctrine by the enactment of new and separate legislation. Defendants cite the language "imposition ... of liability" in section (D)(2) and suggest that in hazardous waste actions against joint tortfeasors there can be no joint liability unless the legislature has revived by separate enactment the joint and several principle. Defendants point out that the legislature has enacted no such separate legislation.

As an example, defendants cite the narrow class of statutory claims arising under A.R.S. § 49–285(A) regarding the Arizona Water Quality Assurance Revolving Fund (WQARF).[2] However, because the instant case raises the more fundamental question whether a traditional common law principle was or was not altered by the legislature, defendants' analogy to statutory claims created and maintainable exclusively under WQARF is unpersuasive. Our inquiry, in the most basic terms, is centered not on whether a statutory claim has been created, but on whether an established common law principle has been abolished.

In further support of their position, defendants argue that section (D)(2) contains two ambiguities: first, that the reference to *"the imposition of joint and several liability"* does not specify who or what entity does the imposing; and second, that the phrase *"relating to* hazardous wastes ...,"* also in section (D)(2), is susceptible to a range of interpretations. Defendants then search for indications of intent in the legislative history and in the statute's use of terms of art.

We have considered these arguments and find them strained, with a clear tendency to distort plain meaning. Instead, we reach what we believe is a more sensible and logical conclusion—that the term *imposition of joint and several liability* in section (D)(2) was intended by the legislature to include, at the very least, liability *imposed* by a court in dispensing justice for or against joint tortfeasors, and that the term *relating to*, in the

context of the statute as a whole, means *based upon* or *predicated upon* "hazardous wastes...." Courts dispense justice by determining either to impose or not impose liability on a party, and if liability is imposed, to fix an appropriate measure of damage. Moreover, this is a negligence claim predicated on the release of hazardous wastes into the underground water supply. It is thus *related to* or *predicated upon* the very cause of action defined in section (D)(2) and, in our view, there is no other rational way to read the provision. Accordingly, we conclude that the ambiguities urged by defendants in reality do not exist.

Defendants further argue that "the hazardous wastes exception is subject to various constructions ... [and that] [o]ne can read the exception as permitting only the legislature to 'impose' joint and several liability when using ... statutorily created terms of art...." Thus, where a statute defines such terms as "hazardous waste," "hazardous substance," and "solid waste," defendants contend that the legislature intends joint liability to attach only in claims arising under the defining statute. Moreover, defendants claim that the judiciary would have difficulty defining these terms accurately and consistently and that the use of statutory terms of art in section (D)(2) indicates legislative intent that joint and several liability can exist only by specific statutory authorization. As examples, defendants point to cases arising under WQARF or similar environmental regulations rather than under the common law.

Because of the clearly worded statute at issue here, we must decline defendants' invitation to adopt so narrow an interpretation. Moreover, our extensive search has produced nothing in the statute's legislative history to support the attenuated interpretation urged by defendants. *See Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 351, 842 P.2d 1355, 1364 (App.1992) ("[t]here is no legislative history relating to [the section 12–2506(D) ] exceptions....").

In its certification, the district court suggests that to support defendants' position,

---

2. The WQARF, a state counterpart to the federal Superfund program, imposed joint and several liability on responsible parties for the recovery of

the cost of state-approved remedial action to clean up hazardous substances. Section 49–285 has been repealed, effective August 1, 1997.

section (D)(2) would need to be rewritten: "Nothing in this section prohibits the imposition of joint and several liability in a [statutory] cause of action relating to [the cleanup of] hazardous wastes or substances or solid waste disposal sites." We agree. To have crafted the statute in that manner would have altered its meaning by confining the exception strictly to statutory actions for cleanup of hazardous wastes, thereby eliminating common law tort actions. The legislature could have written the statute in this manner, but did not do so.

Finally, defendants argue that the phrase in section (D)(2) "relating to hazardous wastes or substances or solid waste disposal sites" can be applied only to claims arising under environmental cleanup statutes, and that to interpret it otherwise would thwart the goal of tort reform in Arizona. As examples of claims that might arise unless the scope of the exception is thus restricted, defendants suggest medical malpractice alleging the improper use of radiation therapy, negligent application of termite treatment, negligent automobile painting, or a battery committed using a bottle of bleach. A simple reading of the relevant statutory language, coupled with common reason, indicates we need not fear such parade of horribles. We are confident that the courts are alert to the meaning of the language of the statutory exception and thus will be able to confine the statutes to the parameters intended by the legislature. For example, *Cella Barr* interpreted section (D)(2), consistent with our reasoning in this case, to exclude from its scope a professional malpractice claim where an environmental audit failed to discover hazardous wastes on the plaintiff's property. The court of appeals properly distinguished the case, finding that the audit firm's liability "related to the quality of its professional services . . . [,] not to hazardous wastes or substances." 177 Ariz. at 485, 868 P.2d at 1068.

We note that defendants have cited *Cella Barr* in support of their more restricted reading of section (D)(2). *Cella Barr* does not help defendants' argument. In fact, the claim in that case, as indicated, did not arise as a hazardous waste claim but was instead an allegation of malpractice and professional negligence, precisely the sort of claim plaintiffs would probably agree is outside the reach of the exception in section (D)(2). *Id.* at 482, 868 P.2d at 1065. We agree with *Cella Barr* but reject defendants' argument that because the case interpreted section (D)(2) to exclude professional malpractice, the section must also exclude tort claims for negligent release of hazardous waste. This argument would require the court to make an unjustified quantum leap from the plain meaning of section (D)(2), which on its face leaves joint liability undisturbed in hazardous waste tort actions, to the notion that separate legislation imposing joint liability is required in order to reach the very result that section (D)(2) on its face already provides. The language of the existing statute simply does not support defendants' contention.

■ Defendants' central argument is that the general purpose of the statute as a whole is to abolish joint and several liability in actions against joint tortfeasors, and thus the exceptions established in section (D)(2) must be construed as narrowly as possible. We might agree with that proposition if the statute were indeed ambiguous or unclear, because we agree generally that courts should interpret ambiguous and unclear statutes to conform with general goals expressed in the legislative history. *Dietz,* 169 Ariz. at 510, 821 P.2d at 171. We conclude, however, that this statute is neither ambiguous nor unclear and that defendants' arguments do not conform to the general goals underlying this legislation. Defendants' approach ignores the fact that an exception is inherently contrary to the rule. *See State v. Cassius,* 110 Ariz. 485, 487, 520 P.2d 1109, 1111 (1974) ("Where a statute first expresses a general intent, and later an inconsistent particular intent, such particular intent will be taken as an exception to the general intent, and both will stand."), *cert. dismissed,* 420 U.S. 514, 95 S.Ct. 1345, 43 L.Ed.2d 362 (1975).

Defendants' arguments, including the briefs of amici curiae, do not embrace the critical issue before the court as to the function and meaning of the section (D)(2) exception to the general rule. We find the arguments to be thinly stretched beyond what is

otherwise a clear interpretation of the existing statutory language.

Thus, while the abolition of joint liability in section (A) is clear, it is equally certain that in the process of abolition, the legislature carved out a particularized exception to the general rule, and in so doing, issued a clear mandate that the common law doctrine of joint liability among tortfeasors, as it pertains to actions covered by section (D)(2), is to be left undisturbed.[3]

## DISPOSITION

The statutory exception in A.R.S. § 12–2506(D)(2) preserves the common law principle of joint liability as the applicable law in "cause[s] of action relating to hazardous wastes or substances or solid waste disposal sites." We cannot and should not attempt to modify legislative policy evidenced by statutory language that is clear on its face.

ZLAKET, C.J., and FELDMAN, MOELLER and MARTONE, JJ., concur.

---

3. The court is aware of Senate Bill 1450 enacted during the first regular session of the 1997 Arizona State Legislature. Senate Bill 1450, if signed by the Governor, will repeal A.R.S. § 12–

2506(D)(2). Repeal will raise new and different issues fully outside the scope of the question certified to us by the district court.