NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

DONALD SHOOTER, *Plaintiff/Appellant,*

*v.*

STATE OF ARIZONA, et al., *Defendants/Appellees.*

No. 1 CA-CV 22-0142
FILED 3-2-2023

---

Appeal from the Superior Court in Maricopa County
No.  CV2019-050782
The Honorable Daniel G. Martin, Judge
The Honorable Theodore Campagnolo, Judge

**AFFIRMED**

---

COUNSEL

Wilenchik & Bartness PC, Phoenix
By Dennis I. Wilenchik, Ross P. Meyer, Jordan C. Wolff
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By G. Michael Tryon, Rebecca Banes
*Counsel for Defendant/Appellee, State of Arizona*

Tully Bailey LLP, Phoenix
By Stephen W. Tully
*Counsel for Defendant/Appellee, Mesnard*

Cohen Dowd Quigley PC, Phoenix
By Daniel P. Quigley, Cynthia C. Albracht-Crogan, Betsy J. Lamm
*Counsel for Defendant/Appellee, Adams*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

---

**B R O W N**, Judge:

¶1        Donald Shooter, former member of the Arizona House of Representatives ("the House"), appeals from the superior court's orders (1) dismissing his due process claims, and (2) granting summary judgment in favor of the defendants on his claims for defamation and civil conspiracy. Because the court did not err, we affirm.

## BACKGROUND

¶2        Much of the factual background related to this litigation is outlined in *Mesnard v. Campagnolo ex rel. Cnty. of Maricopa*, 251 Ariz. 244 (2021).  As pertinent here, in January 2019 Shooter sued House Speaker J.D. Mesnard, the governor's chief of staff Kirk Adams, and the State of Arizona (collectively, "Defendants"), alleging violations of Shooter's rights under the state and federal constitutions, a claim under 42 U.S.C. § 1983, and a civil conspiracy to defame and expel him.  The case was removed to federal district court, which dismissed Shooter's federal due process, equal protection, and § 1983 claims based on qualified immunity and remanded the state claims to the superior court.

¶3        After the filing of various motions on remand, the superior court dismissed Shooter's remaining claims without prejudice.  In January 2020, he filed an amended complaint alleging in part that (1) Mesnard and the State defamed Shooter in the investigative report that led to Shooter's expulsion and in Mesnard's February 1, 2018 press release, (2) Mesnard's actions in the expulsion violated Shooter's due process rights under the Arizona Constitution, and (3) Defendants conspired to defame Shooter and violated his due process rights.  Shooter described his "due process protected interest" as being "well recognized in established case law around the country as a stigma-plus liberty interest."

¶4          In his original complaint, Shooter had alleged a defamation claim based only on the investigative report; he asserted that "Defendants made defamatory statements to the press outside of legislative proceedings." In his amended complaint, Shooter alleged for the first time that the Mesnard press release was defamatory because it included a false statement that made Shooter "appear to be deceitful."

¶5          Defendants moved to dismiss Shooter's amended complaint on multiple grounds, including that his new due process claim presented non-justiciable political questions. The superior court dismissed the due process and conspiracy claims, reasoning in part that without a legislative enactment creating an express stigma-plus cause of action under Arizona law, or "an appellate ruling that creates an independent implied 'stigma-plus' authority, this Court has no authority to countenance such right of action." Shooter's defamation claims survived against Mesnard and the State, while the conspiracy to defame claim survived against Adams and Mesnard but was dismissed as to the State.

¶6          Mesnard had argued that the defamation claims against him should be dismissed based on absolute legislative immunity, but the court declined to do so "without a well-developed record." Mesnard petitioned for special action relief, and our supreme court held that absolute legislative immunity applied to Mesnard's actions relating to the investigative report, but not the news release. *Id*. at 246, ¶ 1.

¶7          Shooter's only surviving claims at that point were (1) defamation against Mesnard and the State based on the press release, and (2) conspiracy to defame against Mesnard and Adams. Mesnard and Adams each moved for summary judgment. The superior court granted Mesnard's motion, finding that Shooter failed to comply with the notice of claim statute, A.R.S § 12-821.01, and his claims were untimely under A.R.S. § 12-821 ("All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward."). The State then asked for summary judgment, asserting no derivative liability existed after dismissal of the defamation claim against Mesnard. The court granted all three motions for summary judgment, and later entered judgment on all claims.

¶8          Shooter timely appealed from the superior court's rulings granting the motions to dismiss and the summary judgment motions. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶9** We review an order granting a motion to dismiss and the interpretation and application of statutes de novo. *Blankenbaker v. Marks*, 231 Ariz. 575, 577, ¶ 6 (App. 2013). We assume the truth of all "well-pleaded allegations and indulge all reasonable inferences from those facts." *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 9 (2012). We also review de novo an order granting summary judgment. *Mein ex rel. Mein v. Cook*, 219 Ariz. 96, 98, ¶ 9 (App. 2008). We will affirm the court's ruling if it "can be sustained on any theory framed by the pleadings and supported by the evidence." *Gen. Elec. Cap. Corp. v. Osterkamp*, 172 Ariz. 191, 193 (App. 1992).

### A. Stigma-Plus Claim

**¶10** Shooter argues the superior court erred in granting Defendants' motions to dismiss. He asks us to adopt an "independent implied stigma-plus cause of action," and recognize a private right of action for damages under the due process clause of the Arizona Constitution, alleging that the actions taken to expel him deprived him of a "stigma-plus liberty interest" and thus violated his due process rights. *See* Ariz. Const. art. 2, § 4. Consistent with their motions to dismiss, Defendants argue that because Shooter's stigma-plus claim is based on his expulsion from the House, it presents a non-justiciable political question that would offend separation of powers principles if the judiciary were to intervene.

**¶11** The Arizona Constitution states that the three branches of government "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others." Ariz. Const. art. 3. The political question doctrine originates from this constitutional provision; the doctrine prohibits courts from interfering with issues that the Constitution commits to another branch of government. *Puente v. Ariz. State Legislature*,__ Ariz. __, __, ¶ 7, 521 P.3d 1007, 1010, (2022). A non-justiciable political question is presented when there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it." *Id.* (Citation omitted). The two aspects of this test are interdependent and a lack of standards "may strengthen the conclusion that there is a textually demonstrable commitment to a coordinate branch." *Id.* at 1010, ¶ 8 (citation omitted).

**¶12** On the first aspect of the test, our constitution provides that each legislative body "may punish its members for disorderly behavior, and may, with the concurrence of two-thirds of its members, expel any

4

member." Ariz. Const. art. 4, pt. 2, § 11. The language of this provision plainly demonstrates a "textually demonstrable" commitment to the legislative branch that expulsion of a member of the House of Representatives is within the power of the House.

**¶13**        As to whether there is a "lack of judicially discoverable and manageable standards for resolving" the question at issue, *Puente*, 521 P.3d at 1010, ¶ 7, the only constitutional requirement for the expulsion of a member of the House is an affirmative vote of two-thirds of the members, Ariz. Const. art. 4, pt. 2, § 11. Shooter contends he was denied due process by the procedures the House followed to expel him. He argues that "[h]ad the House applied the Rules that were in effect, the House Ethics Committee would have evaluated the allegations." *See* Rules of the Arizona House of Representatives 53rd Legislature 2017-2018, https://www.azleg.gov/alispdfs/53leg/House/53rd_leg_Rules.pdf. But no rule requires that process. The only provision addressing expulsion of a member is Rule 1(A), which merely reiterates the constitutional requirement of a two-thirds concurrence from the other members. *Id*. at 1. Shooter cites no other rule or authority that supports his argument, and our own review of the Rules reveals no other procedures, limitations, or requirements addressing expulsion.

**¶14**        Because our constitution explicitly gives the power of expelling representatives to the House, and there are no other "judicially discoverable and manageable standards," Shooter's stigma-plus due process claim for his expulsion from the House is a non-justiciable political question. *See* Ariz. Const. art. 4, pt. 2, §§ 8, 11; *Puente*, 521 P.3d at 1010, ¶ 7. On the facts alleged, there is no legal justification for court intervention on Shooter's stigma-plus claim. Likewise, we reject Shooter's request to find a private right to recover damages for a violation of Arizona's constitutional due process clause. His damages theory is merely part of the stigma-plus claim, and so the theory fails. Thus, we need not decide whether absolute legislative immunity applies, whether to recognize a stigma-plus cause of action in Arizona, or whether a legislator has a due process property interest in holding office.

### B.    Defamation and Civil Conspiracy

**¶15**        In the summary judgment proceedings, Mesnard argued in part that Shooter's defamation claim based on the Mesnard press release was barred by the one-year statute of limitations, § 12-821. In response, Shooter argued in part that his defamation claim based on the Mesnard press release related back to the original complaint because Mesnard was

on notice of all "defamatory statements to the press." The issue was also discussed at oral argument, and in its ruling the superior court separately noted each of the grounds supporting summary judgment, including untimeliness under § 12-821. In his opening brief on appeal, however, Shooter makes no attempt to challenge the court's § 12-821 ruling. Adams and the State assert that Shooter waived any such challenge by failing to address it in his opening brief. We agree.

¶16  An opening brief must present arguments that explain an appellant's contentions on each issue raised. *See Ramos v. Nichols*, 252 Ariz. 519, 522, ¶ 8 (App. 2022) (citing ARCAP 13(a)(7)). Generally, issues that are not properly presented in an opening brief are waived. *See id.* "An appellant who fails to make a 'bona fide and reasonably intelligent effort to comply with the rules' will waive issues and arguments 'not supported by adequate explanation, citations to the record, or authority.'" *Id.* (citing *In re Aubuchon*, 233 Ariz. 62, 64–65, ¶ 6 (2013); *see also Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 6 (App. 2017) ("[W]e adhere to the policy that it is generally not our role to *sua sponte* address issues not raised by the appellant.").

¶17  The statute of limitation issue was briefed and argued in the superior court; indeed, it was listed as a "separate and independent" ground in the court's summary judgment ruling. Yet Shooter did not address that ground in his opening brief. And in his reply brief he fails to explain the omission. Instead, he vaguely suggests, without citing authority, that because Arizona is a notice pleading state his allegation in the amended complaint about the Mesnard press release relates back to his original complaint. Given these circumstances, Shooter waived any contention that the court erred in finding that his claims were untimely under § 12-821. We therefore affirm the court's ruling on that ground and do not address whether other grounds support the ruling.

¶18  Because the court properly dismissed Shooter's stigma-plus and defamation claims, his related civil conspiracy claims against Defendants necessarily fail. *See Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, 545, ¶ 42 (App. 2000) ("A civil conspiracy requires an underlying tort which the alleged conspirators agreed to commit."). Likewise, given that the court appropriately denied all of Shooter's claims against Mesnard and Adams, his claims against the State based on respondeat superior also fail. *See Law v. Verde Valley Med. Ctr.*, 217 Ariz. 92, 96, ¶ 13 (App. 2007) (stating that if a claim is dismissed, the "potentially vicariously liable" party is not responsible).

## CONCLUSION

¶19  We affirm the superior court's orders dismissing Shooter's due process claims and granting summary judgment for Defendants on his defamation and civil conspiracy claims.

