909 P.2d 441

Allen **NATSEWAY** and Armida Natseway, husband and wife, surviving parents of Virginia Marie Natseway, deceased, Plaintiffs–Appellants,

v.

**CITY OF TEMPE, a municipal corporation, and Les Gray, Defendants–Appellees.**

**No. 1 CA–CV 95–0007.**

Court of Appeals of Arizona, Division 1, Department E.

Aug. 8, 1995.

Review Denied Jan. 17, 1996.

---

Law Offices of Ronald D. Mercaldo, Ltd. by Ronald D. Mercaldo, Anthony J. Wiggins and John W. McDonald, Tucson, for plaintiffs-appellants.

Ronald L. Dunham and Andrew B. Ching, Asst. Tempe City Attys., Tempe, for defendants-appellees.

## OPINION

KLEINSCHMIDT, Presiding Judge.

During the early morning hours of a day in October 1992, a Mesa police officer became suspicious of a car travelling east on Broadway Road in Mesa. He began following the car, and after observing two traffic violations and learning that the car's insurance had been canceled or had expired, he activated his overhead lights and tried to stop the car. A chase ensued during which the car reached speeds up to eighty-five miles per hour and passed through both green and red lights at several intersections. As the chase continued, the car headed towards Tempe. The pursuit ended when the car ran a red light at the intersection of Guadalupe and Price roads and collided with another car that was travelling south on Price. The driver of the other car, the Plaintiffs' daughter, was killed in the collision.

Defendant Les Gray, a Tempe police officer, had learned of the pursuit in progress by radio and had gone to the intersection of Price and Guadalupe. He parked near the northeast corner of the intersection to observe the pursuit. He did not attempt to block the intersection to prevent cross-traffic from entering the path of the pursuit because that was not his normal practice and because traffic was light. There is some dispute as to how long Officer Gray was at the intersection prior to the accident, but it is generally agreed that he arrived there at least one minute prior to the collision.

The Plaintiffs filed a complaint for wrongful death against the City of Tempe and its officer ("Tempe"), and the City of Mesa and its officer ("Mesa"). The complaint alleged that Mesa was negligent in pursuing the fleeing automobile and that Tempe negligently failed to warn the Plaintiffs' daughter of the approaching pursuit. It also alleged that both cities negligently supervised and trained their officers.

Both Tempe and Mesa denied negligence and named the driver of the pursued car, Jesus Mendoza, as a nonparty at fault. Prior to trial, the Plaintiffs settled with Mesa. Mesa was dismissed from the suit, and Tempe then listed Mesa as a nonparty at fault.

At every stage of the proceedings, the Plaintiffs unsuccessfully argued that Tempe could not compare its negligence with the fault of Mendoza because Mendoza acted intentionally and Tempe had a duty to prevent Mendoza from causing the very incident that resulted in their daughter's death. The Plaintiffs also argued unsuccessfully that Tempe could not compare its fault with that of Mesa because there was insufficient evidence that Mesa was a cause of the collision.

The jury returned a verdict of $5,000,000 in favor of the Plaintiffs. It found that the Tempe officer was three percent at fault; the City of Tempe was seven percent at fault; the Mesa officer was three percent at fault; the City of Mesa was seven percent at fault; and Mendoza was eighty percent at fault. The trial court later reduced the total damages to $1,500,000 and entered judgment against Officer Gray in the amount of $45,000 and against the City of Tempe in the amount of $105,000. The Plaintiffs argue on appeal that Tempe should not have been permitted to compare its negligence with the intentional acts of Mendoza, and that there was insufficient evidence on the issue of Mesa's causation to allow the jury to determine that Mesa was partially at fault.

## THE TRIAL COURT WAS CORRECT IN PERMITTING TEMPE TO COMPARE ITS FAULT WITH THE FAULT OF MENDOZA

■ The Plaintiffs assert that it is against public policy to allow a negligent tortfeasor to reduce its liability by comparing its negligence to the intentional wrong of another which the tortfeasor had a duty to prevent. There are two interrelated facets to the Plaintiffs' argument. The first is the contention that by allowing a negligent tortfeasor to compare its fault to the intentional wrong of another, the negligent tortfeasor will substantially avoid, or escape, liability because a jury will not be able to resist the argument that the intentional actor was the real cause of the harm. The second facet of the argument is that those, like police officers, who have a duty to prevent others from causing harm and negligently fail to do so should not be permitted to reduce their fault by arguing that another person, in this case a criminal, caused or contributed to the harm which it was the very duty of the police to prevent.

The first facet of the Plaintiffs' argument is derived in part from several Kansas cases, discussed in detail below, which dealt with the failure of one tortfeasor to protect against the intentional acts of another. We conclude, however, that Mendoza cannot be considered an intentional tortfeasor in this case. At most, Mendoza was reckless or grossly negligent in causing the harm to the Plaintiffs' daughter. Although he was intentionally fleeing from the police and consciously disregarded a substantial risk of causing harm to others, he had no specific intent to harm the Plaintiffs' daughter.

The real crux of the problem is presented in the second facet of the Plaintiffs' argument. They say that to allow Tempe to compare its negligence with the fault of Mendoza, when it was Tempe's duty to act reasonably to prevent Mendoza from causing the very harm that occurred, dilutes or diminishes Tempe's duty because Tempe can shift all blame to Mendoza who was, particularly in the eyes of the jury, the direct cause of the harm. This, they contend, could result in Tempe avoiding all liability for its breach of duty. The essence of the argument is that Tempe had an overriding duty to prevent the harm because its duty encompassed the obligation to prevent Mendoza from causing the harm.

Despite Tempe's duty to prevent Mendoza from causing the harm, we believe that to place the entire responsibility for the accident on Tempe would be inconsistent with the principles of comparative fault as they are embodied in Ariz.Rev.Stat.Ann. ("A.R.S.") sections 12–2505 and 12–2506. In adopting our comparative fault scheme, the legislature intended that the trier of fact consider the fault of *all persons* who contributed to the harm and intended that each tortfeasor be responsible for only his or her percentage of fault *and no more*. *See* A.R.S. § 12–2506; *Dietz v. General Elec. Co.,* 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991).

A strong tendency to apply comparative fault principles regardless of the relationship between the parties and the nature of the duty owed is reflected in several Arizona cases. In *Del E. Webb Corp. v. Superior Court,* 151 Ariz. 164, 169, 726 P.2d 580, 585 (1986), the facts giving rise to the case occurred prior to the adoption of our comparative fault statute. Nevertheless, the supreme court permitted the defendant, a resort, to raise the defense of contributory negligence although the resort had negligently served alcohol to an obviously intoxicated patron who later drowned in the re-

sort's swimming pool. The plaintiff argued that if the resort could plead contributory negligence, the resort's duty to protect the patron would be illusory because the patron would almost always be contributorily negligent, barring any recovery against the resort. By the time the case reached the supreme court, the comparative negligence statute had been adopted. The court observed that the plaintiff's argument had much less weight in Arizona after the adoption of comparative negligence because, under comparative negligence, the plaintiff's negligence would be compared to that of the resort rather than used to bar the plaintiff's recovery. *Id.* at 169, 726 P.2d at 585. But the court held that, even under the contributory negligence statute, the resort's failure to fulfill its duty to prevent the plaintiff from harming himself did not preclude it from asserting the plaintiff's negligence as a defense. *Id.* at 170–71, 726 P.2d at 586–87.[1]

In *Dietz v. General Elec. Co.,* 169 Ariz. 505, 509–10, 821 P.2d 166, 170–71 (1991), the supreme court permitted the defendant manufacturer of an industrial machine to compare its fault with the fault of the plaintiff's employer even though the plaintiff was precluded from suing his employer by the workers' compensation law. The court reached this result even though the plaintiff had to use his recovery against the manufacturer to reimburse his employer or its insurance carrier for any benefits he had received from them. The court reasoned that the intent of the legislature in making sure that each tortfeasor is responsible for paying for his or her percentage of fault, *and no more,* had to prevail over the concern that the plaintiff could not recover against his employer and would have his recovery reduced because of the reimbursement requirement. *Id.* at 509–10, 821 P.2d at 170–71.

■ These Arizona cases reflect a recognition of the legislature's strong desire to ensure that comparative fault principles are applied in most cases where the actions of more than one party combine to cause harm. The trial court was correct in applying comparative fault in this case even though Tempe had a duty to prevent Mendoza from causing the accident.

At least one other court agrees with our conclusion. In *Reichert v. Atler,* 117 N.M. 623, 875 P.2d 379, 381–82 (1994), the Supreme Court of New Mexico held that a negligent bar owner's failure to prevent an assault on a patron could be compared to the assailant's intentional conduct. In so holding, the court directly considered and rejected the argument that the bar owner should not be allowed to compare his negligence with the fault of the assailant because he had a duty to protect his customers against assailants. *Id.* at 382.

The Plaintiffs mainly rely on a trilogy of cases from Kansas. *See Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.,* 249 Kan. 348, 819 P.2d 587, 606 (1991) (company's negligent failure to prevent bus driver from molesting a child could not be compared to intentional conduct of bus driver); *Gould v. Taco Bell,* 239 Kan. 564, 722 P.2d 511, 517 (1986) (restaurant owner's negligent failure to protect patron from assault could not be compared to assailant's intentional conduct); *M. Bruenger & Co., Inc. v. Dodge City Truck Stop, Inc.,* 234 Kan. 682, 675 P.2d 864, 869 (1984) (bailee's negligent failure to prevent theft of truck could not be compared to the intentional act of the thief). These cases, however, are based in large part on the fact that a negligent defendant failed to prevent an intentional tortfeasor from causing harm. In Kansas, comparative fault does not apply if one of several defendants acts intentionally. *Lynn v. Taylor,* 7 Kan. App.2d 369, 642 P.2d 131, 135–36 (1982). Consequently, the Kansas cases did not need to rely on the fact that the negligent tortfeasor had a duty to prevent the intentional tortfeasor from causing the harm to conclude that comparative fault did not apply. In this case, Mendoza was not an intentional tortfeasor. Thus, even though the Kansas cases reflect a concern that the negligent party had a duty to prevent the intentional tortfeasor from causing harm, the cases are inapposite

---

1. The court said that it did not reach the question of whether the defense would have been available had the liquor been served to a minor.

*Id.* at 170 n. 8, 726 P.2d at 586 n. 8. This appears to remain an open question.

to this case because of the fact that comparative fault could not apply in those cases due to the intentional fault of one of the tortfeasors.

The Plaintiffs also cite *Blazovic v. Andrich,* 124 N.J. 90, 590 A.2d 222, 233 (1991), in which the New Jersey Supreme Court indicated that, in some cases, a court could appropriately preclude apportionment of fault between two tortfeasors when the duty of one encompasses the obligation to prevent the specific conduct of the other. The court, however, refused to preclude the apportionment of fault in that case. *Id.* We see nothing in *Blazovic* to cause us to preclude the application of comparative fault in this case.

Finally, we do not share the Plaintiffs' fear that juries will never find against a defendant like Tempe. We believe that a jury, as did the jury in this case, will be able to understand the duties involved in situations similar to this case, and will be able to equitably apportion fault according to those duties and the facts presented in the particular case.

### THERE WAS SUFFICIENT EVIDENCE THAT MESA WAS A CAUSE OF THE ACCIDENT TO ALLOW THE JURY TO APPORTION FAULT TO MESA

 The Plaintiffs argue that Tempe should not have been allowed to compare Mesa's fault with its own because, according to them, Tempe did not present sufficient evidence that Mesa's failure to stop the pursuit before the accident was a legal cause of their daughter's death. They assert that the only evidence presented on this point came from Mesa police officers who testified that fleeing drivers are so unpredictable that it is impossible to know if they will stop their flight even after the police have ended their pursuit. They argue that the jury had to speculate that it was the failure to stop the pursuit that caused the accident rather than independent actions of Mendoza.

This argument is without merit. We must view the evidence in the light most favorable to the prevailing party. *McFarlin v. Hall,* 127 Ariz. 220, 224, 619 P.2d 729, 733 (1980). Tempe was only required to introduce evidence that afforded a reasonable basis for the conclusion that it was more likely than not that Mesa's conduct was a substantial factor in bringing about the accident. *See Wisener v. State,* 123 Ariz. 148, 150, 598 P.2d 511, 513 (1979). Common sense and common experience suggest that Mesa's continuing pursuit was a substantial factor in causing the accident. Were it otherwise, there would be no reason for police departments to set up guidelines governing when officers should cease pursuit of a fleeing suspect.

The judgment of the trial court is affirmed.

CONTRERAS and FIDEL, JJ., concur.