930 P.2d 1002

**Darlene THOMAS, surviving spouse of John Warren Thomas, on her own behalf and on behalf of John Jr., Kayla and Tiffany Thomas, the minor children of Darlene and John Warren Thomas, and George W. Thomas III and Kathleen J. Thomas, the parents of John Warren Thomas, deceased, Plaintiffs/Appellees,**

v.

**FIRST INTERSTATE BANK OF ARIZONA, N.A., Defendant/Appellant.**

No. 2 CA–CV 96–0061.

Court of Appeals of Arizona, Division 2, Department B.

July 30, 1996.

Review Denied Jan. 14, 1997.*

---

* Jones, V.C.J., of the Supreme Court, recused himself and did not participate in the determination    of this matter.

Stompoly, Stroud, Giddings, and Glicksman, P.C. by John G. Stompoly, Tucson, for Plaintiffs/Appellees.

Jennings, Strouss & Salmon, P.L.C. by Jon D. Schneider and James M. Ackerman, Phoenix, for Defendant/Appellant.

## OPINION

HATHAWAY, Judge.

In this wrongful death action against First Interstate Bank, the issue on appeal is whether the comparative fault statute, A.R.S. § 12–2506, permits the allocation of fault between an allegedly negligent defendant, appellant First Interstate Bank, and a non-party (Patrick Slay), who commits a criminal act of murder. On plaintiffs' Motion for Declaratory Judgment for interpretation of the statute, the trial court entered a formal judgment, certified under Ariz. R. Civ. P. 54(b), 16 A.R.S., granting plaintiffs' motion and striking Slay as a non-party at fault. We conclude that such an individual can be so designated and reverse the trial court's ruling.

The relevant facts are undisputed. At approximately 10 p.m. on July 19, 1992, Slay approached a customer using the automatic teller machine located in the front of the First Interstate Bank in Sierra Vista. Slay displayed a gun and demanded money from the customer, who withdrew $200 from the machine. Slay grabbed the money and ran along the side of the building, pursued by the customer. The victim, John Thomas, a private security guard hired to escort a bank customer who was making a night deposit, was standing at the back of the bank building. Thomas had parked at the rear of the bank and was watching while the deposit was being made. Slay ran straight toward Thomas, fired three shots at him and ran off into the night. Thomas died from his wounds. Slay was eventually arrested and is incarcerated.

Appellees filed a wrongful death suit against First Interstate Bank, which moved to have Slay designated as a non-party at fault. Appellees opposed the motion, contending the comparative fault statute does not contemplate intentional criminal conduct. The trial court denied the motion, hence this appeal.

A.R.S. § 12–2506(B) states, in part, "In assessing percentages of fault the trier of fact shall consider the fault of *all* persons who contributed to the alleged injury, death or damage to property. . . ." (Emphasis added). Appellees contend that because of the absence of any reference to "criminal conduct" in the statute, it is ambiguous and does not permit allocation of fault between a negligent defendant and a non-party who commits a criminal act causing plaintiff's injuries. As plaintiffs acknowledge, however, some acts are both torts and crimes. The tort remedy for criminal homicide is, of course, an action for wrongful death. A plain meaning interpretation of § 12–2506 encounters no ambiguity. The legislature defined fault broadly to include all types of fault committed by all persons. Previous Arizona cases have skirted the issue of intentional fault by concluding the tortfeasor acted recklessly, willfully or wantonly. *See Wareing v. Falk*, 182 Ariz. 495, 897 P.2d 1381 (App. 1995);. *Natseway v. City of Tempe*, 184 Ariz.

**490**

374, 909 P.2d 441 (App.1995). We find helpful the New Jersey Supreme Court ruling in *Blazovic v. Andrich,* 124 N.J. 90, 107, 590 A.2d 222, 231, 18 A.L.R. 5th 1031 (1991), where it observed: "[W]e reject the concept that intentional conduct is 'different in kind' from both negligence and wanton and willful conduct.... Instead, we view intentional wrongdoing as 'different in degree' from either negligence or wanton and willful conduct." Excluding the acts of an intentional tortfeasor would detract from the legislature's definition of fault. We find the statute unambiguous on this issue.

Appellees' interpretation of § 12–2506 would also frustrate the legislative intent of the statute. In *Dietz v. General Elec. Co.,* 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991), the supreme court acknowledged that the legislature specifically enacted § 12–2506 to establish "a system of several liability making each tortfeasor responsible for paying for his or her percentage of fault *and no more.*" (Emphasis in original). Thus, "the labels attached by the law to various types of conduct should not thwart the principle that it is the overall fault of the parties which is to be measured." *Blazovic,* 124 N.J. at 99, 590 A.2d at 227, *quoting McCann v. Lester,* 239 N.J.Super. 601, 610, 571 A.2d 1349, 1353 (N.J.App.Div.1990).

Appellees' main assertion is appellant breached a duty which "permitted and encouraged" the criminal conduct of the nonparty. The court in *Natseway* addressed this issue reasoning that despite owing a duty to prevent a third party from causing harm, "we believe that to place the entire responsibility for the accident on [the negligent party] would be inconsistent with the principles of comparative fault as they are embodied in Ariz.Rev.Stat. Ann. ("A.R.S.") sections 12–2505 and 12–2506." 184 Ariz. at 376, 909 P.2d at 443. The court further noted in *Natseway* that juries are able to decipher the duties involved and "will be able to equitably apportion fault according to those duties and the facts presented in the particular case." 184 Ariz. at 378, 909 P.2d at 445.

Appellees argue that the goal of "spreading the risk" so that innocent victims can recover for injuries will be defeated if the statute is interpreted to permit the allocation of civil fault to a criminal. Appellee's dismal prospect for recovering damages from Slay is, however, irrelevant to our determination. In *Dietz,* the supreme court permitted the defendant manufacturer of an industrial machine to compare its fault with the fault of the plaintiff's employer even though the plaintiff was precluded from suing his employer by the workers' compensation law. The court reasoned that the purpose of § 12–2506 to apportion liability in proportion to each tortfeasor's fault, *and no more,* prevailed over the concern that the plaintiff would have his recovery reduced because of the requirement to reimburse his employer for any amount received under workers' compensation.

Reversed and remanded for further proceedings.

DRUKE, C.J., and LIVERMORE, J., concur.