937 P.2d 676

**Blake ZUERN, a minor, By and Through Frank ZUERN and Kristie Zuern, husband and wife, Plaintiffs/Appellants,**

v.

**FORD MOTOR COMPANY, a Delaware corporation, Defendant/Appellee.**

**No. 2 CA–CV 96–0182.**

Court of Appeals of Arizona, Division 2, Department A.

Dec. 19, 1996.

Review Granted June 5, 1997.

---

**2.** Plaintiff's counsel during the subject transaction was different than counsel who represents

her in this case.

488

Haralson, Kinerk & Morey, P.C. by Dale Haralson and B. Lance Entrekin, Tucson, for Plaintiffs/Appellants.

Snell & Wilmer L.L.P. by Douglas W. Seitz and Rosalind R. Greene, Tucson, for Defendant/Appellee.

### OPINION

PELANDER, Presiding Judge.

In this product liability case against a motor vehicle manufacturer, plaintiffs/appellants obtained a jury verdict but they challenge two evidentiary rulings by the trial court. The first ruling excluded certain evidence of vehicle defectiveness on disclosure grounds, and the second ruling admitted evidence concerning a nonparty's fault. In connection with the second ruling, we must examine what effect, if any, Arizona's Uniform Contribution Among Tortfeasors Act (UCATA), A.R.S. §§ 12–2501 to 12–2509, has on the application of this court's pre-Act decision in *Cota v. Harley Davidson*, 141 Ariz. 7, 684 P.2d 888 (App.1984). We find no error in either of the trial court's rulings and therefore affirm.

### FACTS AND PROCEDURAL HISTORY

This case arises from a two-vehicle accident in November 1991. Robert Ellisor, who was intoxicated and driving a Lincoln Continental at a speed of approximately 36 to 39 miles per hour, rear-ended plaintiffs' 1988 Ford Aerostar van, which was stopped. The van was equipped with four "captain's chairs." Plaintiff Frank Zuern was driving and his then five year-old son, Blake, was seated in the chair directly behind him. Both were wearing seat belts. During the collision, Mr. Zuern's seat back collapsed rearward into the space that Blake occupied. Blake sustained a fractured left femur and severe head injuries.

Plaintiffs sued Ford Motor Company (Ford), alleging that their van was defective and unreasonably dangerous and that Ford was strictly liable in tort for designing, manufacturing and selling the vehicle. Ford timely designated Ellisor as a nonparty at fault. The jury returned a verdict for plaintiffs and awarded full damages of $643,000 to Blake Zuern and $127,314 to his parents, plaintiffs Frank and Kristie Zuern. The jury allocated 70% of the fault to Ellisor and 30% of the fault to Ford, and the trial court entered judgment in accordance with the verdict for plaintiffs against Ford in the total net amount of $231,094.20. Plaintiffs moved for a new trial, challenging, *inter alia*, the aforementioned evidentiary rulings, and then appealed only from the trial court's order denying that motion.

### DISCUSSION

1. Evidence of Rear Seat Defectiveness

■ Plaintiffs contend the trial court erred in excluding their proffered evidence of defects in the rear seat which Blake occupied, claiming the evidence would have simply rebutted a new defense theory which Ford had first disclosed less than sixty days before trial and which Ford presented at trial. "A trial court's rulings on the exclusion or admission of evidence will not be disturbed on appeal unless a clear abuse of discretion appears and prejudice results." *Selby v. Savard*, 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982). In addition, "[t]he trial court has broad discretion in ruling on discovery and disclosure matters," and we will not disturb its ruling absent a clear abuse of discretion. *Soto v. Brinkerhoff*, 183 Ariz. 333, 335, 903 P.2d 641, 643 (App.1995).

Throughout this litigation, plaintiffs primarily contended that Mr. Zuern's seat was defective, unreasonably dangerous and had caused Blake's injuries. According to plaintiffs, Blake's head injuries resulted from Mr. Zuern's seat ramping backward during the

collision and causing his head to forcefully strike Blake's head. Approximately three months before trial, however, plaintiffs' experts formed a new opinion that Blake had hit the back of his head on an upper, horizontal cross member in his own seat back frame after he was struck by Mr. Zuern. Inspection of Blake's seat two months before trial revealed a dent in the upper, horizontal cross member of his seat back. The dent indisputably was made by Blake's head hitting it. When Ford moved to continue the trial for sixty days to address the new evidence, plaintiffs opposed the motion and essentially contended that their liability theory had not changed. The trial court denied Ford's motion.

Subsequently, the trial court granted Ford's motion *in limine* to preclude plaintiffs from arguing or presenting evidence that a defect in Blake's seat caused or contributed to his injury, and denied Ford's alternative motion to postpone the trial, both of which plaintiffs opposed. Adhering to its ruling, the trial court later rejected plaintiffs' proffered expert testimony, presented ·through an offer of proof during trial, that the rear seat was defective and unreasonably dangerous if Blake's head injuries resulted solely from his contacting the cross member in his seat back, without any impetus or force from Mr. Zuern.

■ Considering the entire context of its ruling, we cannot say the trial court clearly abused its discretion in precluding plaintiffs' proffered evidence concerning defectiveness of Blake's seat. Plaintiffs first disclosed that new, albeit alternative, theory informally during their expert's supplemental deposition one month before trial,[1] and then formally through a supplemental disclosure a few days later. That disclosure came more than three months after the deadline for disclosing expert opinions. Thus, the trial court did not err in excluding the evidence based on plaintiffs' failure to timely and properly disclose the new liability theory, particularly since plaintiffs, not Ford, initially interjected the new issues into the case. Ariz.R.Civ.P. 26.1, 16 A.R.S. *See generally Allstate Insurance Co. v. O'Toole,* 182 Ariz. 284, 896 P.2d 254 (1995); *Bryan v. Riddel,* 178 Ariz. 472, 875 P.2d 131 (1994); *Jones v. Buchanan,* 177 Ariz. 410, 868 P.2d 993 (App.1993); *cf. Czarnecki v. Volkswagen of America,* 172 Ariz. 408, 837 P.2d 1143 (App.1991) (trial court properly rejected proposed amendment which would have added a new design defect theory seven weeks before trial).

■ Plaintiffs also contend they timely disclosed the proffered evidence concerning Blake's seat as "rebuttal" evidence, which the trial court should have admitted simply to counter Ford's theory concerning the mechanism of Blake's head injury.[2] We cannot fairly construe the evidence as "rebuttal" evidence, however, nor did plaintiffs so characterize it before, during or after trial. *Cf. Deyoe v. Clark Equip. Co.,* 134 Ariz. 281, 284, 655 P.2d 1333, 1336 (App.1982) ("It has been recognized that the line between direct and rebuttal evidence is hazy and hard to determine and the trial court must have reasonable discretion in fixing the line absent manifest abuse."). We note, moreover, that if plaintiffs regarded evidence of the rear seat's alleged defectiveness as essential to their case, they could and should have acceded to Ford's two requests for a short trial continuance to allow it time to address the new theory. Instead, they opposed the continuances. Under the circumstances, we cannot say the trial court abused its discretion in

---

1. In his supplemental deposition, plaintiffs' expert opined that the rear seat cross member was too hard and its padding inadequate, but acknowledged that he had had all of the information and materials needed to reach that conclusion at the time of his first deposition taken more than three months before trial.

2. Ford's experts testified at trial that Blake's head injury was caused solely by his head striking the seat back cross member in his seat. Those opinions were disclosed by Ford just weeks before trial and differed from the experts' deposition testimony. Plaintiffs waived any error in the admission of the new opinions, however, by not objecting to the testimony at trial and not moving before or during trial to exclude such evidence on disclosure grounds. *Rhue v. Dawson,* 173 Ariz. 220, 230, 841 P.2d 215, 225 (App. 1992). Therefore, we do not address plaintiffs' contention that the trial court erred in "permitting Ford to pursue its new theory of defense without rebuttal from [plaintiffs]."

denying plaintiffs a new trial on this ground. *See* Ariz.R.Civ.P. 59(a)(6), 16 A.R.S.

### 2. Evidence of Nonparty's Intoxication and Criminal Conviction

Analysis of Ellisor's blood after the accident revealed a blood alcohol content of .26%. He pleaded guilty to criminal charges relating to the accident, admitted "he was drunk and intentionally went out to get drunk" at the time, and was sentenced to prison. Over plaintiffs' objection, the trial court admitted evidence of those facts and permitted an investigating detective to testify that Ellisor had a "very strong odor of alcohol," fumbled through his wallet for several minutes looking for his license, refused to perform field sobriety tests, and appeared to be obviously impaired. Based on that evidence, Ford's counsel told the jury in closing argument that it should assess "by far the largest degree of fault" to Ellisor and urged the jury, as "the conscience of the community," to "figure out what we are going to do with drunk drivers in this community."

Plaintiffs contend, as they did in the trial court, that the evidence of Ellisor's intoxication and conviction should have been excluded because it was irrelevant, and any probative value it had was substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. Relying exclusively on *Cota*, plaintiffs maintain that "[t]he reasons why Ellisor drove his car into the Aerostar and the fact that he was subsequently convicted of a criminal charge" were irrelevant to the issue of fault in a case like this involving only a strict liability claim. According to plaintiffs, the only relevant consideration bearing on fault was the extent to which Blake's injuries were caused by the design of the Aerostar and the extent to which they were caused by the foreseeable collision with Ellisor's car.

■ In *Cota*, the plaintiff/motorcyclist was badly burned when one of the cycle's gasoline tanks ruptured during a collision. He sued the manufacturer on a "crashworthiness" theory of strict liability,[3] claiming the motorcycle was defective in its design. On appeal from an adverse jury verdict, the manufacturer alleged error, *inter alia*, in the trial court's exclusion of evidence that the motorcyclist had been drinking before the accident and was driving on the wrong side of the road at the time of the collision. In rejecting that claim, this court stated:

> Defendants' thinly veiled reason for wanting this evidence to be brought to the jury's attention was to paint Cota as a wrongdoer and hope the jury would take that into consideration in either denying liability or in limiting damages. Such a purpose would be improper. The evidence was irrelevant, and the trial court properly excluded it.

141 Ariz. at 14–15, 684 P.2d at 895–96.

■ *Cota* is distinguishable and not controlling here for several reasons. First, unlike this case, *Cota* involved defense claims of product misuse and assumption of risk by the plaintiff which, if proven, would have been a complete bar to the plaintiff's claim. *See* A.R.S. § 12–683(3); *McCarty v. F.C. Kingston Co.*, 22 Ariz.App. 17, 522 P.2d 778 (1974). Second, and more importantly, *Cota* was decided before the UCATA took effect. The Act's comparative fault system has significantly altered the legal landscape. Under the current statutory system, a defendant is liable "only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault." A.R.S. § 12–2506(A). In assessing the "percentage of fault" of each defendant, the factfinder must assess the fault of any nonparties who have been timely and properly designated and who contributed to the injuries or damages. A.R.S. § 12–2506(B) ("In assessing percentages of fault the trier of fact shall consider the fault of all persons who contrib-

---

**3.** This court in *Cota* adopted the crashworthiness theory enunciated in *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir.1968). As Division One of this court has noted, "[a] crashworthiness case is one in which the alleged manufacturing or design defect does not cause the accident," and in which "the manufacturer is liable only for enhancement damages comprised of 'that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design.'" *Czarnecki*, 172 Ariz. at 412 n. 2, 837 P.2d at 1147 n. 2 (App.1991).

uted to the alleged injury ... regardless of whether the person was, or could have been, named as a party to the suit."); Ariz.R.Civ.P. 26(b)(5), 16 A.R.S.  The Act broadly defines fault as

> an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all of its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability and misuse, modification or abuse of a product.

A.R.S. § 12–2506(F)(2).

Division One of this court recently noted "the broad definition of fault in section 12–2506(F)(2), and the clear directive in section 12–2506(B) to compare *all* fault," concluding that "the Arizona comparative fault statutes should be interpreted as requiring comparison of all types of fault, including intentional wrongdoing." *Hutcherson v. City of Phoenix*, 188 Ariz. 183, 192, 933 P.2d 1251, 1260 (Ct.App.1996).[4]  *See also Thomas v. First Interstate Bank*, 187 Ariz. 488, 930 P.2d 1002 (Ct.App.1996); *Natseway v. City of Tempe*, 184 Ariz. 374, 909 P.2d 441 (App.1995).  In addition, our supreme court has made clear that comparative fault principles apply to strict product liability actions. *Jimenez v. Sears, Roebuck & Co.*, 183 Ariz. 399, 405, 904 P.2d 861, 867 (1995) (holding the UCATA requires "a factual determination of the plaintiff's misuse as a relative degree of fault in allocating causal responsibility in a strict products liability claim").  That court also has recognized that § 12–2506(B) compels "the assessment of nonparty fault regardless of whether the nonparty was or could be made a defendant to the action," *Dietz v. General Elec. Co.*, 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991), and that designating a nonparty at fault allows defendants "to offer trial evidence of [the nonparty's] negligence and to argue that the jury should attribute all or some percentage of fault to [the nonparty], thereby reducing Defendants' percentage of fault and consequent liability." *Id.* at 507, 821 P.2d at 168.

Under the UCATA, which expressly defines "fault" to include "strict liability," § 12–2506(F)(2), all of the different types of fault identified in that section, if contributing to the same injury, must be compared in order to comply with the statutory mandate that "the trier of fact shall consider the fault of all persons who contributed to the alleged injury" in assessing percentages of fault. § 12–2506(B).  *See Cleveland v. Piper Aircraft Corp.*, 890 F.2d 1540, 1550 (10th Cir. 1989) ("common sense in the fair application of [New Mexico's] pure comparative negligence system mandates that the negligence of all parties [and nonparties], including original tortfeasors and crashworthiness tortfeasors, which proximately causes enhanced injuries in a crashworthiness or 'second collision' case must be compared"); *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 454 (10th Cir.1982) (in product liability action involving defective design claim, under Kansas law "all types of fault, regardless of degree, are to be compared in order to apportion the causal responsibility for the accident," including the fault of nonparties); *Craigie v. General Motors Corp.*, 740 F.Supp. 353, 359 (E.D.Pa.1990) (under Pennsylvania's UCATA, defendant/vehicle manufacturer in crashworthiness case permitted to implead for contribution "all those whose negligent or tortious acts are alleged to be contributing causes of harm"); *Kidron v. Carmona*, 665 So.2d 289, 292 (Fla.Dist.Ct. App.1995) (jury in enhanced injury case shall consider fault of the parties as well as all others who contributed to the accident, regardless of whether they were named or could have been named as defendants).

We disagree with plaintiffs' contention that the comparative fault issue should have been limited to "the extent to which the collision or defects in the Aerostar caused or contributed to Blake's injuries or damages." Section 12–2506(C) requires the trier to assess "degrees of fault," not just degrees of causation.  Although causation (or physical

---

**4.** Although the court refused to speculate on how *Cota* would be decided today, it noted that § 12–2506(F)(2) "expressly includes 'product liability and misuse' in its definition of 'fault.'" *Hutcherson*, 188 Ariz. at 193, 933 P.2d at 1261.

contribution to the injury) is a necessary condition precedent to consideration of a person's fault—i.e., the fault must have "proximately caus[ed] or contribut[ed]" to the claimant's injuries to be considered, A.R.S. § 12–2506(F)(2)—once causation is found the trier of fact must determine and apportion "the relative degrees of fault" of all parties and nonparties. § 12–2506(C). *See Standard Chartered PLC v. Price Waterhouse,* 229 Ariz.Adv.Rep. 26, 48, —— Ariz. ——, ——, —— P.2d ——, ——, 1996 WL 640702 (Ct.App. November 7, 1996) ("the parties' relative contribution to causation is best left for the jury to determine as an element in apportioning relative degrees of fault"); William L. Prosser, *Comparative Negligence,* 51 Mich.L.Rev. 465, 481 (1953); Victor E. Schwartz, *Comparative Negligence,* § 17–1(a) at 352 (3d ed. 1994) ("The process is *not* allocation of physical causation, which could be scientifically apportioned, but rather of allocating *fault,* which cannot be scientifically measured."). *Accord, State v. Kaatz,* 572 P.2d 775, 782 (Alaska 1977) ("What is to be compared is negligence, conduct, fault, culpability not causation, either physical or legal."); *Day v. General Motors Corp.,* 345 N.W.2d 349 (N.D.1984) (in analyzing comparative fault, jury should consider both accident-producing fault and injury-enhancing fault in crashworthiness case).

■ Thus, the trial court did not err in admitting evidence bearing on Ellisor's fault, including evidence of his intoxication and criminal conviction. *Cf. Keltner v. Ford Motor Co.,* 748 F.2d 1265 (8th Cir.1984) (trial court, applying Arkansas law, did not err in admitting evidence of plaintiff/motorist's drinking habits and odor of intoxicants in crashworthiness case); *Hinkamp v. American Motors Corp.,* 735 F.Supp. 176 (E.D.N.C. 1989), *aff'd,* 900 F.2d 252 (4th Cir.1990) (driver's intoxication considered relevant factor in crashworthiness case). That such evidence was prejudicial to plaintiffs, painted Ellisor as a wrongdoer and undoubtedly increased the chances of the jury assessing a sizeable percentage of fault to him did not make the evidence inadmissible. Moreover, we will not overturn the trial court's weighing of factors and determinations under Ariz.R.Evid. 403,

17A A.R.S., absent a manifest abuse of discretion, which we do not find here. *Readenour v. Marion Power Shovel,* 149 Ariz. 442, 449–50, 719 P.2d 1058, 1065–66 (1986).

Finally, that plaintiffs' strict liability theory was premised on the crashworthiness doctrine did not automatically limit the nature or scope of admissible evidence bearing on Ellisor's fault. *See Whitehead v. Toyota Motor Corp.,* 897 S.W.2d 684, 693–94 (Tenn.1995), and cases cited therein. As Ford correctly notes, in light of Arizona's comparative fault system, the relevance of evidence concerning Ellisor's conduct did not change simply because plaintiffs chose not to sue him or because Ford raised the issue of his fault under § 12–2506.

Affirmed.

DRUKE, C.J., and LIVERMORE, J., concur.