193 P.3d 790

Gregory MEIN, an incapacitated and protected person, by and through his permanent Guardian and Conservator and wife; and Erin MEIN, individually and as wife of, Plaintiffs/Appellants,

v.

Byron M. COOK, a single man; and Andrew Glasner and Lisa Irene Glasner, individually and as husband and wife, Defendants/Appellees.

No. 1 CA–CV 06–0801.

Court of Appeals of Arizona, Division 1, Department B.

April 24, 2008.

Review Denied Sept. 23, 2008.

Doyle Berman Gallenstein, P.C. by William H. Doyle, Teresa Hayashi Wales, D. Andrew Bell, Scott M. Golden, Attorney at Law By Scott M. Golden, Phoenix, Attorneys for Plaintiffs/Appellants.

Jardine Baker Hickman & Houston PLLC by Gerald T. Hickman, Kendall D. Steele, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

GEMMILL, Chief Judge.

¶ 1 This appeal arises from a drag racing accident that resulted in serious personal injuries to a passenger in one of the cars. At trial, the jury found one driver to be 70% at fault and the other to be 5% at fault. The fundamental question presented is whether the driver found to be 5% at fault may be *jointly liable* with the other driver for the plaintiffs' injuries. In this published opinion, we review the trial court's summary judgment ruling that the drivers were not jointly liable because they were not "acting in concert" within the meaning of Arizona Revised Statutes ("A.R.S.") section 12–2506(D)(1) (2003). In a separate memorandum decision filed contemporaneously, we review the trial court's denial of Plaintiffs' motion to amend to assert vicarious liability under A.R.S. § 12–2506(D)(2). Because we agree with the trial court, we affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 Gregory Mein and Erin Mein ("Plaintiffs") appeal the trial court's entry of summary judgment in favor of Andrew Glasner and Lisa Glasner ("Defendants") on the issue of joint liability. In reviewing a grant of summary judgment, we view the facts and reasonable inferences from the facts in a light most favorable to the party against whom judgment was entered. *Maycock v. Asilomar Dev., Inc.,* 207 Ariz. 495, 496, ¶ 2, 88 P.3d 565, 566 (App.2004).

¶ 3 On the evening of October 16, 2003, Andrew Glasner, Byron Cook, and Gregory Mein attended a happy hour celebration held for one of their co-workers. After consuming several drinks, the three men went to another drinking establishment. The men continued their drinking until approximately 10:45 p.m., when Glasner invited the others back to his home. The men traveled towards Glasner's home in two vehicles, one driven by Glasner and the other by Cook. Mein was seated in the backseat of Cook's car.

¶ 4 En route to Glasner's home, the parties were heading west on Ray Road in Phoenix. They came to a stop at 48th Street. While stopped at the intersection, Glasner and Cook began revving their engines and bantering back and forth. As the traffic signal turned green, the men caused their cars to "peel out" and rapidly accelerate. They reached speeds in excess of 80 m.p.h. and were weaving in and out of traffic. As they passed through the intersection of 44th Street and Ray Road, Cook lost control of his vehicle and crashed, causing Mein severe injuries.

¶ 5 In May 2004, Plaintiffs filed their complaint alleging negligence on the part of Cook and Glasner, as well as joint liability on the basis of A.R.S. § 12–2506(D)(1). Plaintiffs eventually moved for summary judgment on the issue of whether Glasner and Cook "acted in concert" and were, therefore, jointly liable for the damages that Plaintiffs sustained as a result of the drag racing incident. Defendants Glasner filed a cross-motion for partial summary judgment arguing that, as a matter of law, they were not jointly liable for the damages caused by Cook.[1]

¶ 6 In January 2006, the trial court decided that there was no evidence from which reasonable jurors could conclude that Defendants committed an intentional tort, a necessary prerequisite under the "acting in concert" exception to A.R.S. § 12–2506. As a result, the court denied Plaintiffs' motion and granted Defendants' cross-motion on this issue.

¶ 7 The case proceeded to trial in July 2006 on the remaining issues. After eight days of trial, the jury returned a verdict in favor of Plaintiffs in the total sum of $3,500,000. The jury apportioned the fault as follows: Cook 70%, Glasner 5%, and Mein 25%. Judgment was entered in favor of Plaintiffs against Defendants Glasner for a total of $175,000 plus costs.

¶ 8 We have jurisdiction to consider Plaintiffs' appeal pursuant to A.R.S. § 12–2101(B) (2003).

## ANALYSIS

¶ 9 We review a summary judgment *de novo* to determine whether a genuine issue of material fact exists and whether the trial court correctly applied the law. *PNL Asset Mgmt. Co. v. Brendgen & Taylor P'ship*, 193 Ariz. 126, 129, ¶ 10, 970 P.2d 958, 961 (App. 1998). The material facts in this case are undisputed. What remains to be determined is whether the facts permit the imposition of joint liability under A.R.S. § 12–2506(D)(1) or vicarious liability under § 12–2506(D)(2).

¶ 10 Plaintiffs argue that the drag racing incident constitutes an intentional tort and Defendants Cook and Glasner were "acting in concert" within the meaning of A.R.S. § 12–2506(D)(1), thereby imposing joint liability on Glasner for Cook's percentage of the judgment. Plaintiffs also argue that because the drag racing constituted the torts of aiding and abetting, civil conspiracy, and joint venture, the trial court should have allowed Plaintiffs to amend their complaint to allege that Cook was acting as the agent of Glasner and that Glasner is vicariously liable under § 12–2506(D)(2) for the damages caused by Cook. Defendants argue that there is no evidence to support the finding of an intentional tort for the purposes of "acting in concert" under § 12–2506(D)(1) and further that the jury's verdict on the issue of punitive damages precludes a determination that the drag racing incident constituted an intentional tort. Defendants also argue that the trial court properly denied Plaintiffs' motion to amend their complaint to seek vicarious liability under A.R.S. § 12–2506(D)(2) and that the facts do not establish an agency relationship within the meaning of § 12–2506(D)(2).

### *"Acting in Concert" Within the Meaning of A.R.S. § 12–2506(D)(1)*

¶ 11 In order for multiple defendants to be jointly liable under A.R.S. § 12–2506(D)(1), they must have been "acting in concert" when the tort was committed:

D. *The liability of each defendant is several only and is not joint, except that a*

---

1. Prior to trial, Cook was dismissed from this action. The jury assessed fault to Cook as a non-

party at fault. He is not a party to this appeal.

party is responsible for the fault of another person, or for payment of the proportionate share of another person, if any of the following applies:

    1.  Both the party and the other person were *acting in concert.*

A.R.S. § 12–2506(D)(1) (emphasis added). In defining the phrase "acting in concert", our legislature has emphasized that joint liability only arises from acting in concert when the parties consciously agree to commit an intentional tort:

    F.  For the purposes of this section:

    1.  "Acting in concert" means entering into a *conscious agreement to pursue a common plan or design to commit an intentional tort* and actively taking part in that intentional tort. *Acting in concert does not apply to any person whose conduct was negligent in any of its degrees rather than intentional.* A person's conduct that provides substantial assistance to one committing an intentional tort does not constitute acting in concert if the person has not consciously agreed with the other to commit the intentional tort.

A.R.S. § 12–2506(F)(1) (emphasis added).

■■■ ¶ 12 A prima facie case under A.R.S. § 12–2506(D)(1) requires proof supporting the conclusion that the parties made a conscious agreement to commit an intentional tort—not a tort that involves merely negligence "in any of its degrees"—and actively took part in the intentional tort. "Conscious" means "having knowledge of something; aware." THE NEW OXFORD AMERICAN DICTIONARY 362 (2d ed.2005).[2] Thus, to have a conscious agreement within the meaning of this statute, the parties must *knowingly agree* to commit the intentional tort.

¶ 13 The requirement of a conscious agreement to commit an intentional tort was not part of the statute when it was originally enacted. The legislature originally defined "acting in concert" as merely "pursuing a common plan or design to commit a tortious

act and actively taking part in it." *See* 1987 Ariz. Sess. Laws, ch. 1, § 2 (1st Reg.Sess.). In 1993, our legislature amended A.R.S. § 12–2506 to include the present requirement that the "tortious act" be an *intentional* tort, thereby narrowing the "acting in concert" exception under A.R.S. § 12–2506(D)(1). Under the current version of the statute, a conscious agreement to commit a "tortious act" will not suffice to impose joint liability under § 12–2506(D)(1), unless the tortious act is an *intentional* tort.

¶ 14 Accordingly, we must determine if the evidence presented in this case would support a finding that Glasner and Cook knowingly agreed to commit an intentional tort.

### No Agreement to Commit an Intentional Tort

■■ ¶ 15 The legislature did not define "intent" or "intentional" for purposes of A.R.S. § 12–2506. Plaintiffs cite Restatement (Second) of Torts § 8A as authority regarding the meaning of the word "intent." This Restatement section has been considered in prior appellate decisions in Arizona. *See, e.g., W. Agric. Ins. Co. v. Brown,* 195 Ariz. 45, 49, ¶ 16, 985 P.2d 530, 534 (App. 1998); *In Re Estate of Hoover,* 140 Ariz. 464, 466–67, 682 P.2d 469, 471–72 (App.1984). Section 1–213, A.R.S., provides that "[t]echnical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning." We will therefore consider Restatement (Second) of Torts § 8A in determining the meaning of "intent."

¶ 16 Section 8A defines intent as follows:

    The word "intent" is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.

---

**2.**  When interpreting a statute, we will give words their ordinary meanings, unless a specific definition is given or the context clearly indicates that a special meaning was intended. A.R.S. § 1–213 (2002); *Trustmark Ins. Co. v. Bank One, Ariz., NA,* 202 Ariz. 535, 541, ¶ 27, 48 P.3d 485, 491

(App.2002). If the legislature has not defined a word or phrase in a statute, we will consider respected dictionary definitions. *Urias v. PCS Health Sys., Inc.,* 211 Ariz. 81, 85, ¶ 22, 118 P.3d 29, 33 (App.2005).

RESTATEMENT (SECOND) OF TORTS § 8A (1965). Comment *a* sheds further light on the meaning and usage of "intent":

> *a.* "Intent," as it is used throughout the Restatement of Torts, has reference to the *consequences* of an act rather than the act itself. When an actor fires a gun in the midst of the Mojave Desert, he intends to pull the trigger; but when the bullet hits a person who is present in the desert without the actor's knowledge, he does not intend that result. "Intent" is limited, wherever it is used, to the *consequences* of the act.

RESTATEMENT (SECOND) OF TORTS § 8A cmt. a (emphasis added).

¶ 17 Thus, the act that caused the harm will qualify as intentional conduct only if the actor desired to cause the *consequences*—and not merely the act itself—or if he was certain or substantially certain that the *consequences* would result from the act. Comment *b* to section 8A confirms the requirement of certainty or substantial certainty:

> *b.* All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. *If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.* As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness, as defined in § 500. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence, as defined in § 282. All three have their important place in the law of torts, but the liability attached to them will differ

RESTATEMENT (SECOND) OF TORTS § 8A cmt. *b* (emphasis added).

¶ 18 Applying these principles here, we conclude that Plaintiffs have not presented sufficient evidence to support a claim for joint liability based upon a theory of "acting in concert" within the meaning of A.R.S. § 12–2506(D)(1).

¶ 19 In order for Cook and Glasner to have been acting in concert when Mein was injured, they must have knowingly agreed to commit an intentional tort. We agree with Plaintiffs that the evidence is sufficient to support a finding that Cook and Glasner agreed to race, knowing that they had been drinking, and did race. But the conduct the parties agreed upon does not constitute an intentional tort. Drag racing while under the influence of alcohol is not, in and of itself, a tort. In contrast, two people may agree in advance to beat up a person (tort of battery), to kidnap a person (tort of false imprisonment), to rob a store (tort of conversion), to enter onto private property and cut down trees (torts of trespass and conversion), or to defraud someone (tort of fraud). If two people agree to commit one of these intentional torts and then actively participate in completing the tort, they trigger the "acting in concert" basis for joint liability under A.R.S. § 12–2506(D)(1), (F)(1).

¶ 20 There is no evidence, however, that Cook and Glasner agreed to commit an intentional tort. Even if we assume *arguendo* that the *conduct* they agreed upon—to race on a public street after an evening of drinking—may be considered "intentional" *conduct* under the substantial certainty test, nonetheless they have not agreed to commit an *intentional tort* because such conduct, in and of itself, does not constitute a tort. Reckless driving only becomes a tort if an accident occurs. Damage or injury is necessary to complete the tort. *See Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983) ("[N]egligence requires proof of a duty owed to the plaintiff, a breach of that duty, an injury proximately caused by that breach, and damage."); *Horne v. Mobile Area Water & Sewer Sys.,* 897 So.2d 972, 977 (Miss.2004) ("an injury is necessary to complete a tort"); *Reed v. Cloninger,* 131 P.3d 359, 366 (Wyo. 2006) (a tort is not complete until damage has occurred). Here, the parties may have agreed on *conduct* but there is no evidence they agreed to cause an accident or serious physical injuries. Section 12–2506(F)(1) requires that the parties agree to commit an

intentional tort, not simply that the parties agree to commit specific conduct that does not constitute a tort.

¶ 21 Accordingly, we conclude that Cook and Glasner did not consciously agree to commit an intentional tort within the meaning of A.R.S. § 12–2506(D)(1) and (F)(1). The fact that an accident occurred with resultant harm does not transform their agreement to race into an agreement to commit an intentional tort.

¶ 22 Absent evidence that Cook and Glasner had a desire to cause harm to Mein or knowingly agreed to have a serious accident, they did not agree to commit an intentional tort within the meaning of A.R.S. § 12–2506(D)(1). There is nothing in the record to suggest that Cook and Glasner desired to cause Mein or anyone else severe injuries by engaging in the drag race, nor do Plaintiffs suggest that this is the case. The record is similarly devoid, in our view, of any evidence that Glasner and Cook consciously agreed to have a serious accident. Based on this record, the trial court properly granted summary judgment to Defendants.

**The Harm Was Not Substantially Certain**

¶ 23 There is a second, independent reason why we believe Defendants are entitled to summary judgment establishing no joint liability: the conduct of the drivers did not, as a matter of law, rise to the level of intentional conduct under A.R.S. § 12–2506(D)(1). We have no doubt that speeding on a public road after an evening of drinking creates a substantial risk that harm may occur. But the evidence in this record does not support a finding that significant harm was certain or substantially certain to occur. It is not enough that there is a substantial risk of harm. To be deemed an intentional act, there must be *certainty or substantial certainty* that significant harm will result. RESTATEMENT (SECOND) OF TORTS § 8A cmt. *b*. Drag racing on a public street while under the influence of alcohol may constitute gross negligence, recklessness, or even wanton misconduct. But negligence "in any of its degrees" does not constitute intentional conduct. A.R.S. § 12–2506(F)(1).

¶ 24 Plaintiffs assert that Glasner and Cook knew or should have known that engaging in a drag race while under the influence of alcohol was substantially certain to result in serious injury. Plaintiffs emphasize that the combination of drag racing and alcohol so increases the risk that a significant accident is substantially certain to take place. At least, Plaintiffs argue, a fact question is created by these facts, thereby precluding summary judgment. We do not agree.

¶ 25 The record does not contain any evidence that would suggest that Glasner and Cook knew or should have known that serious injuries were certain or substantially certain to occur. Absent some evidence that the tortfeasors intended the consequences of their acts, we cannot say that the irresponsible conduct here rises to the level of intentional conduct. *See D'Amario v. Ford Motor Co.*, 806 So.2d 424, 438 (Fla.2001) ("While acting under the influence of alcohol may sometimes justify an award of punitive damages against the offender, we cannot conclude that negligent conduct induced by the use of alcohol constitutes an independent intentional tort under our 'substantially certain' test for intentional torts.").

¶ 26 Illustration two of the Restatement underscores this conclusion:

> On a curve in a narrow highway A, without any desire to injure B, or belief that he is substantially certain to do so, recklessly drives his automobile in an attempt to pass B's car. As a result of this recklessness, A crashes into B's car, injuring B. A is subject to liability to B for his reckless conduct, but is not liable to B for any intentional tort.

RESTATEMENT (SECOND) OF TORTS § 8A cmt. *b*, illus. 2 (1965). In this case, Glasner is liable to Mein for his own negligent conduct, found by the jury to be 5%. Glasner is not, however, liable to Mein for an intentional tort.

¶ 27 This court considered a related issue in *Natseway v. City of Tempe*, 184 Ariz. 374, 909 P.2d 441 (App.1995). In *Natseway* a driver, while intentionally fleeing the police, was speeding in excess of 85 m.p.h., weaving in and out of traffic, and running red lights. *Id.* at 375, 909 P.2d at 442. One of the issues addressed was whether such grossly negli-

102

gent or reckless driving constituted an intentional tort. The *Natseway* court said "no," explaining:

We conclude, however, that Mendoza cannot be considered an intentional tortfeasor in this case. At most, Mendoza was *reckless or grossly negligent* in causing the harm to the Plaintiffs' daughter. Although he was intentionally fleeing from the police and consciously disregarded a substantial risk of causing harm to others, he had *no specific intent* to harm the Plaintiffs' daughter.

*Id.* at 376, 909 P.2d at 443 (emphasis added).

¶ 28 Similarly, Cook and Glasner acted intentionally to injure Mein only if they desired to hurt him or if they knew that such a consequence was certain, or substantially certain, to result from their conduct. *See* RESTATEMENT (SECOND) OF TORTS § 8A cmt. *b.* "Certain" means "known for sure; established beyond doubt." THE NEW OXFORD AMERICAN DICTIONARY 279 (2d ed.2005). There is no evidence that Cook and Glasner were "certain" that an accident with serious personal injuries would occur as the result of their racing, and Plaintiffs do not contend otherwise. Plaintiffs do contend, however, that a jury should be permitted to determine whether Cook and Glasner proceeded to race and drive recklessly, knowing that significant injury was "substantially certain." We must consider, therefore, the meaning of "substantially certain" (or "substantial certainty") in this context.

¶ 29 Knowing to a "substantial certainty" that something will occur is different than consciously disregarding a substantial risk that something will happen. "Substantial certainty" imposes a higher standard than recklessness. In *In Re Estate of Hoover,* this court emphasized the difference between reckless and intentional conduct:

The California court refused to equate reckless conduct with intentional conduct, which it defined as conduct in which the actor either desired the result or knew to a substantial certainty that the result would ensue. This definition of intentional conduct is similar to the concept cited by the bank from the Restatement (Second) of Torts § 8A, comment b (1965) to the effect

that intended results encompass those which are substantially certain to ensue from specific conduct. *This concept is something more than the disregard of a substantial risk that a result will ensue.*

140 Ariz. at 467, 682 P.2d at 472 (emphasis added).

■ ¶ 30 In this context, "substantially certain" means nearly certain. As noted above, *supra* ¶ 28, "certain" means "known for sure; established beyond doubt." "Substantially" means "to a great or significant extent" or "for the most part; essentially." THE NEW OXFORD AMERICAN DICTIONARY 1687 (2d ed.2005). Combining these definitions leads to the conclusion that substantial certainty is a higher standard than mere likelihood or probability (even though substantial certainty is less than absolute certainty). "Substantial certainty" requires even more than a "substantial probability" of significant harm. *See Canady v. McLeod,* 116 N.C.App. 82, 446 S.E.2d 879, 881–82 (1994) ("Substantial certainty requires more than a mere possibility or substantial probability of serious injury or death.").

¶ 31 These principles support our conclusion that Cook and Glasner's conduct was reckless but not intentional. It is unquestionably dangerous to drink and drive, and it is even more dangerous for two drivers to then drag race on a public street. Such conduct is irresponsible and reprehensible. But even if one believes that injury was likely or probable to occur, we do not perceive that this record supports an inference that these drivers knew to a certainty or substantial certainty that a serious injury was about to occur.

¶ 32 Section 12–2506 is part of the Uniform Contribution Among Tortfeasors Act ("UCATA"). The history and purpose of UCATA provide further support for our decision. In 1984, our legislature enacted UCATA, thereby adopting principles of comparative fault. *See* 1984 Ariz. Sess. Laws, ch. 237, § 1 (2nd Reg.Sess.). Under this new system, fault was apportioned to each actor according to his or her own culpability. This transition to comparative fault did not initially alter the common law with respect to joint liability,

however. A defendant found 10% at fault could be forced to pay 100% of the judgment if the co-defendant found 90% at fault had neither liability insurance coverage nor assets. UCATA permitted a defendant who had paid more than its allocated share to seek contribution from the other defendants but, as our supreme court pointed out, "Arizona's negligence law still produced harsh results when one defendant was insolvent, thus leaving the others unable to obtain contribution." *Piner v. Superior Court,* 192 Ariz. 182, 187, ¶ 21, 962 P.2d 909, 914 (1998).

¶ 33 In 1987, however, our legislature altered the common law of joint liability when it enacted A.R.S. § 12–2506. *See* 1987 Ariz. Sess. Laws, ch. 1, § 2 (1st Reg.Sess.); *State Farm Ins. Cos. v. Premier Manufactured Sys., Inc.,* 217 Ariz. 222, 225, ¶ 12, 172 P.3d 410, 413 (2007). Joint liability was eliminated except under very limited and carefully defined circumstances. *See Yslava v. Hughes Aircraft Co.,* 188 Ariz. 380, 383, 936 P.2d 1274, 1277 (1997) ("In 1987, the legislature enacted A.R.S. § 12–2506 to abolish common law joint liability, subject to certain exceptions, and to preserve several liability in claims brought against multiple tortfeasors."). As a result, the vast majority of tortfeasors would no longer be exposed to the risk of having to pay for more than their proportionate share of fault. "Guiding this statutory revision was a desire to 'increase the fairness of the tort system for both plaintiffs and defendants' by making each tortfeasor liable for only his or her share of fault, and no more." *Hutcherson v. City of Phoenix,* 192 Ariz. 51, 54, ¶ 16, 961 P.2d 449, 452 (1998) (citation omitted). The jury in this case found Glasner's share of the fault to be 5%.

¶ 34 Consideration of the 1993 amendment to A.R.S. § 12–2506 lends further support to our analysis. As already noted, *supra* ¶ 13, the original definition of "acting in concert" required merely "pursuing a common plan or design to commit a tortious act and actively taking part in it." *See* 1987 Ariz. Sess. Laws, ch. 1, § 2 (1st Reg.Sess.). By replacing "tortious act" with "intentional tort," the legislature further narrowed the already-limited circumstances under which joint liability could be imposed for acting in concert. Declining to expand the definition of an intentional tort to encompass an agreement to drag race after an evening of drinking is consistent with the legislative intent to limit joint liability.

¶ 35 For these reasons, we hold that Glasner did not commit an intentional tort against Mein by engaging in the drag racing incident. As a result, Glasner was not "acting in concert" with Cook within the meaning of A.R.S. § 12–2506. For this additional reason, therefore, the trial court appropriately determined that the Defendants are not jointly liable for Cook's percentage of fault.[3]

### Liability Under A.R.S. § 12–2506(D)(2)

¶ 36 Plaintiffs also argue that the trial court abused its discretion in denying a motion to amend to allow Plaintiffs to allege that Defendants are vicariously liable under A.R.S. § 12–2506(D)(2) for Cook's negligence, based on one or more of three theories: aiding and abetting, joint venture, and civil conspiracy. Because only our resolution of the "acting in concert" issue merits publication, we have addressed the trial court's denial of Plaintiffs' motion in a separate memorandum decision. *See* ARCAP 28(g); Ariz. R. Sup.Ct. 111(h). For the reasons stated in the memorandum decision, we find

---

**3.** We need not reach Defendants' additional argument that because the jury returned a verdict for Defendants on the issue of punitive damages, this court is precluded by the doctrine of *res judicata* from finding that Glasner committed an intentional tort by engaging in the drag race. We note, however, that this argument overlooks the differing burdens of proof. *See Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 332, 723 P.2d 675, 681 (1986) ("Therefore, while a plaintiff may collect compensatory damages upon proof by a preponderance of the evidence of his injuries due to the tort of another, we conclude that recovery of punitive damages should be awardable only upon clear and convincing evidence of the defendant's evil mind."); *see also In re Stephanie B.,* 204 Ariz. 466, 470, ¶ 16, 65 P.3d 114, 118 (App.2003) ("That differing burdens of proof can make a substantive difference is illustrated by the situation, not uncommon in our jurisprudence, in which an individual may be found not guilty of a particular criminal offense, but still held liable in a related civil matter due to the lesser burden of proof.").

no abuse of discretion in the trial court's ruling.

## CONCLUSION

¶ 37 We affirm the trial court's entry of summary judgment on the issue of "acting in concert" under A.R.S. § 12–2506(D)(1) because the evidence does not support a finding that Glasner and Cook entered into a knowing agreement to commit an intentional tort. We also affirm the trial court's denial of Plaintiffs' motion to amend to allege vicarious liability under A.R.S. § 12–2506(D)(2).

CONCURRING: MICHAEL J. BROWN, and PATRACIA A. OROZCO, JJ.

